**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                  )
ADA L. GONZALES,                                  )
                                                  )
          Plaintiff,                              )
                                                  )        Civil Action No. 07-0676 (PLF)
          v.                                      )
                                                  )
MICHAEL B. MUKASEY,                               )
Attorney General,                                 )
United States Department of Justice,              )
                                                  )
          Defendant.                              )
_____)

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Defendant, by undersigned counsel, respectfully moves the Court, pursuant to Rule 56 of

the Federal Rules of Civil Procedure, for an order granting summary judgment on the grounds

that there are no genuine issues in dispute on plaintiff's claim of retaliation and Defendant is

entitled to judgment as a matter of law.  In support of this Motion, the Court is respectfully

referred to the accompanying Memorandum of Points and Authorities, Statement of Material

Facts Not in Dispute and Exhibits.  A proposed Order is also attached.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS,. Bar #434122
Assistant United States Attorney


___/s/_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7224

Of Counsel:
JASON P. COOLEY
MARIE E. BURKE
MELINDA HART
Office of Justice Programs
Office of the General Counsel

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
ADA L. GONZALES,                        )
                                        )
          Plaintiff,                    )
                                        )     Civil Action No. 07-0676 (PLF)
          v.                            )
                                        )
MICHAEL B. MUKASEY,                     )
Attorney General,                       )
United States Department of Justice,    )
                                        )
          Defendant.                    )
_____)

**<u>DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>**

Pursuant to Rule 56 of the Rules of Civil Procedure and Local Rule 56.1, defendant,

Michael Mukasey, Attorney General of the United States, respectfully submits the following

statement of material facts not in dispute.

1.  On March 13, 2000, the Plaintiff began working as a GS-14 Branch Manager in the

Training and Policy Division ("TPD") of OJP's Office of the Comptroller.  Affidavit of Plaintiff

(Plaintiff Aff.) (Exhibit 1, p. 4).

2.  At all times relevant hereto, Cynthia J. Schwimer was OJP's Comptroller.  Cynthia

Schwimer's Responses to the Investigator's Questions (Schwimer Resp.)  (Exhibit 2, p.1).

3.  The Plaintiff initially participated in EEO activity in February 2002, when she

contacted an EEO counselor at OJP to complain of alleged actions of her first-line supervisor,

TPD Director Travis McCrory.  EEO Report of Counseling (Counselor's Report) (Exhibit 3, p.

2-5); *Cf.* Plaintiff's EEO Complaint (Exhibit 18).

4. Ms. Schwimer became aware of the Plaintiff's EEO activity on April 16, 2002, when

she was copied on an e-mail message to Mr. McCrory from OJP's EEO Officer, Lori Bledsoe.

Schwimer Resp. (Exhibit 2,  pp.2, 16).

5.  On June 26, 2002, Ms. Schwimer approved a cash award to the Plaintiff for work she had done translating OJP's Financial Guide into Spanish.  Schwimer Resp. (Exhibit 2, pp. 20-21).

6.  In June 2002, the GS-15 position of TPD Director was announced.  Vacancy Announcement JP-02-034-LS (Vacancy Ann.) (Exhibit 5).

7.  OJP's Office of Personnel was responsible for announcing the TPD Director vacancy, and first posted the vacancy announcement on OJP's website with an opening date of June 4, 2002, and a closing date of June 18th, 2002.  Transcript of April 11, 2005 EEO Hearing (EEO Hrg. Trans.) (Exhibit 4, p. 92-95); Vacancy Ann. (Exhibit 5).

8.  Ms. Schwimer had determined that this vacancy announcement would be open to employees of OJP only, and that it would be open for a two-week period.  EEO Hrg. Trans. (Exhibit 4, pp. 91-93).

9.  Because the Plaintiff was on an extended absence from the office that would continue beyond the closing date for the TPD Director vacancy announcement, and because Ms. Schwimer believed that the Plaintiff might be interested in applying for the position, Ms. Schwimer expressly directed her Special Assistant, Maureen Smythe, to notify the Plaintiff of the vacancy announcement. Deposition of Cynthia Schwimer on July 17, 2008 (7/17/08 Schwimer Dep.) (Exhibit 6, p.15); EEO Hrg. Trans. (Exhibit 4, pp. 93-94); Copy of June 5, 2002 e-mail message from Maureen Smythe to Plaintiff (Exhibit 17).

10.  Ms. Smythe sent an e-mail message on June 5, 2002, and left a telephone message for the Plaintiff to make her aware of the vacancy announcement. 7/17/08 Schwimer Dep.

(Exhibit 6, p. 50); EEO Hrg. Trans. (Exhibit 4, p. 66); Copy of June 5, 2002 e-mail message from Maureen Smythe to Plaintiff (Exhibit 17).

11.  The Plaintiff submitted a timely application for the position.  Deposition of Plaintiff on June 2, 2008  (6/2/08 Plaintiff Dep.) (Exhibit 8, p. 41); Plaintiff Aff. (Exhibit 1, p. 28); EEO Hrg. Trans. (Exhibit 4, p. 64-65).

12.  Ms. Schwimer was the selecting official for the position of TPD Director.  7/17/08 Schwimer Dep. (Exhibit 6, p. 12).

13.  Ms. Schwimer received from OJP's Office of Personnel a Promotion Candidate List that identified four GS-14 candidates (Plaintiff, Joanne Suttington, Angel "Jerry" Conty, and Maureen Smythe) who were qualified for the position of TPD Director, all of whom were well known to Ms. Schwimer.  7/17/08 Schwimer Dep. (Exhibit 6, p. 16); Schwimer Resp. (Exhibit 2, p. 3); Promotion Candidate List (Exhibit 9, pp. 1, 95-96); EEO Hrg. Trans. (Exhibit 4,  p. 97). *Cf.* EEO Hrg. Trans. (Exhibit 4, pp. 95-96).

14.  Ms. Schwimer had known each of the four candidates professionally for at least ten years, 7/17/08 Schwimer Dep. (Exhibit 6,  p. 16).

15.  Ms. Schwimer selected Ms. Suttington.  Joanne Suttington's Application for Vacancy Announcement JP-02-034-LS (Exhibit 11); 7/17/08; Schwimer Resp. (Exhibit 2, p. 3); EEO Hrg. Trans. (Exhibit 4,  p. 98).

16.  Over a year before the non-selection at issue here, on or about September 2000, the Plaintiff had applied and was interviewed for the same position of TPD Director (EEO Hrg. Trans. (Exhibit 4, p. 51)), vacated by an earlier official's retirement.

17.  The Plaintiff had not been involved in any EEO activity at that time.  EEO Hrg.

Trans. (Exhibit 4, p. 52).

18.  Ms. Schwimer, who was also the selecting official at that time, did not select the Plaintiff for the position in 2000.  EEO Hrg. Trans. (Exhibit 4, p. 51); Deposition of Plaintiff on February 10, 2004 in EEO matter (2/10/04 Plaintiff  Dep.) (Exhibit 10, pp. 72).

19.  The Plaintiff does not know Ms. Schwimer ever to have commented, derogatorily or otherwise (to the Plaintiff or to anyone else) about the fact that the Plaintiff had filed an EEO complaint.  2/10/04 Plaintiff Dep. (Exhibit 10, pp. 86-87).

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS,. Bar #434122
Assistant United States Attorney


___/s/_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7224

Of Counsel:
JASON P. COOLEY
MARIE E. BURKE
MELINDA HART
Office of Justice Programs
Office of the General Counsel

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                              )
ADA L. GONZALES,                              )
                                              )
        Plaintiff,                            )
                                              )        Civil Action No. 07-0676 (PLF)
        v.                                    )
                                              )
MICHAEL B. MUKASEY,                           )
Attorney General,                            )
United States Department of Justice,         )
                                              )
        Defendant.                            )
———————————————————————)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

After an ample discovery period, the record reflects that summary judgment should be granted to Defendant, Michael Mukasey, Attorney General of the United States, in this suit brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., because there are no genuine issues of material fact in dispute and Defendant is entitled to judgment as a matter of law.

Although the Plaintiff filed suit alleging that she was subjected to retaliation for engaging in protected equal employment opportunity activity in federal employment, in her non-selection for the position of Director of the Training and Policy Division, Office of the Comptroller, Office of Justice Programs, the record demonstrates that the Plaintiff's claim lacks any credible evidentiary basis.

**I.       PRELIMINARY STATEMENT**

The Plaintiff initially contacted the Equal Employment Opportunity (EEO) Office at the Office of Justice Programs ("OJP"), U.S. Department of Justice (the "Agency"), in February 2002,

alleging that she had been subjected to discrimination and a hostile work environment on the basis of her age, sex, and national origin, by her first-line supervisor, Travis McCrory. OJP's Comptroller, Cynthia Schwimer, became aware of the Plaintiff's EEO activity on April 16, 2002, when she was copied on an e-mail message to Mr. McCrory from OJP's EEO Officer, Lori Bledsoe. In June 2002, the Plaintiff filed a complaint with the EEO Office, containing the same allegations against Mr. McCrory. The Plaintiff subsequently amended that complaint to include a claim of retaliation against Ms. Schwimer, after Ms. Schwimer did not select her for the position of Director of the Training and Policy Division in OJP's Office of the Comptroller in July 2002. After full discovery in the administrative proceeding, EEOC Administrative Judge Gladys Collazo granted the Agency's Motion For Judgment Without a Hearing on the discrimination and hostile work environment claims, and set for hearing the Plaintiff's retaliation claim. On April 11, 2005, Administrative Judge Collazo held a hearing on the retaliation claim, and heard testimony from the Plaintiff and Ms. Schwimer, among others. Following that hearing, the Administrative Judge ruled in favor of the Agency on the retaliation claim. The Department of Justice Complaints Adjudication Office issued the Final Agency Decision on July 6, 2005, affirming Administrative Judge Collazo's decision in favor of the Agency. On the Plaintiff's appeal to the EEOC, its Office of Federal Operations affirmed the Final Agency Decision. The Plaintiff's retaliation claim in the instant judicial action is identical to the claim of retaliation alleged in the administrative proceeding. Accordingly, the Defendant's Motion herein relies upon documents and prior sworn testimony from the administrative proceeding, as well as depositions taken during this judicial proceeding.

## II.     STATEMENT OF FACTS

(Defendant's Statement of Material Facts Not In Dispute is incorporated herein by reference.)

## III.     STANDARD OF REVIEW

### A.     The Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (quotation marks omitted).

### B.     The Legal Standard for a Title VII Retaliation Claims

To establish a *prima facie* case of retaliation, a plaintiff must show that:  (1) she "engaged in statutorily protected activity"; (2) "the employer took an adverse personnel action"; and (3) "a causal connection existed between the two."  *Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d 210, 214 (D.D.C. 2008) (quotation marks omitted); *see Brantley v. Kempthorne*, No. 06-1137, 2008 WL 2073913, at *6 (D.D.C. May 13, 2008).  Absent any direct evidence of retaliation, to establish a causal connection between protected activity and an adverse action, a plaintiff may show that the employer had knowledge of the protected activity and that the

3

adverse action occurred shortly thereafter.  *Baker v. Potter*, 294 F. Supp. 2d 33, 41 (D.D.C. 2003).  In order to raise an inference of retaliation based solely on temporal proximity, "[t]he temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be very close."  *Id.* (quotation marks omitted).

After the employee establishes the *prima facie* case, the employer then is given the opportunity to articulate a legitimate, non-retaliatory reason for the adverse action that the employee claims to have suffered.  The employer's burden, "however, is one of production, meaning it 'need not persuade the court that it was actually motivated by the proffered reasons.'" *Barnette v. Chertoff*, 453 F.3d 513, 516 (D.C. Cir. 2006) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981)).  If the employer produces evidence that it acted for a legitimate, non-retaliatory reason, then the burden returns to the employee to prove that the employer's proffered justification is a mere pretext for retaliation.  *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000).  "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the [employer] intentionally [retaliated] against the [employee] remains at all times with the [employee].'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

The D.C. Circuit has recently clarified that in considering an employer's motion for summary judgment "[i]n a Title VII [retaliation] suit where an employee has suffered an adverse employment action and [the] employer has asserted a legitimate, [non-retaliatory] reason for the decision, the district court need not — *and should not* — decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*."[1]  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original); *see Pardo-Kronemann*, 541 F.

---

[1]  *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

Supp. 2d at 215-16 (stating that the *Brady* principle applies to Title VII retaliation suits). Instead, the district court should resolve only one question:  Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-retaliatory reason is a pretext for retaliation.  *See Brady*, 520 F.3d at 494; *Short v. Chertoff*, 555 F. Supp. 2d 166, 172 (D.D.C. 2008); *Pardo-Kronemann*, 541 F. Supp. 2d at 215-16.

In making that determination, the court must consider whether a jury could infer retaliation from:  (1) a plaintiff's *prima facie* case; (2) any evidence that a plaintiff may present to attack a defendant's stated non-retaliatory reason for the action; and (3) any further evidence of retaliation that may be available to a plaintiff.  *Short*, 555 F. Supp. 2d at 172 (*citing Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998)).

Where it is clear that a plaintiff cannot present evidence sufficient to justify an inference of retaliation, even after *Brady*, it is still appropriate to reject the claim based on the failure to establish a *prima facie* case.  *See Von Muhlenbrock v. Billington*, No. 05-1921, 2008 WL 4381542, at *4 (D.D.C. Sept. 29, 2008): *Williams v. Dodaro*, No. 07-1452, 2008 WL 4228363, at *11 (D.D.C. Sept. 17, 2008).  As we set forth below, the Plaintiff's retaliation claim must be rejected because she cannot raise an inference of retaliation.

**IV.** **ARGUMENT**

    **A.** **The Plaintiff's Retaliation Claim Must Fail**

        **1.** **The Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation**

Although the Defendant does not dispute that the Plaintiff engaged in protected EEO activity, or that her non-selection constitutes a legally cognizable injury, she has failed to demonstrate a causal connection between the two.  The Plaintiff, therefore, has not established a

*prima facie* case of retaliation.

The causal connection component of the *prima facie* case may be established by showing that the employer had knowledge of the employee's protected activity, and then took action adverse to the employee shortly after obtaining such knowledge. *Mitchell v Baldridge,* 759 F.2d 80, 86 (D.C. Cir. 1985). That did not happen here. Ms. Schwimer learned of the Plaintiff's EEO activity on April 16, 2002, when she was copied on an e-mail message from OJP's EEO officer, Lori Bledsoe, to Travis McCrory. Schwimer Resp. (Exhibit 2, pp. 2, 16). The Plaintiff's non-selection, however, did not occur until July 16, 2002, a full three months after Ms. Schwimer became aware of her EEO activity. Promotion Candidate List (Exhibit 9, p. 1). Absent any other evidence of retaliation, a three-month gap between Ms. Schwimer's learning of the Plaintiff's EEO activity and her decision not to select the Plaintiff for the TPD Director position is insufficient to establish a causal connection. *See Edwards v. Environmental Prot. Agency*, 456 F. Supp. 2d 72, 92 (D.D.C. 2006) (concluding that a two-month gap is too long to establish a causal connection by virtue of temporal proximity); *Baker v. Potter*, 294 F. Supp. 2d 33, 41 (D.D.C. 2003) (same); *Clark County School District v. Breeden,* 532 U.S. 268, 273 (2001) (citing favorably *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997), which rejected an inference of causation where the events were three months apart).

In addition, Ms. Schwimer, whom the Plaintiff did not level any claims against in her initial EEO complaint, approved a discretionary cash award for the Plaintiff in late-June 2002, *after* she had learned of the Plaintiff's EEO activity. Moreover, Ms. Schwimer knew of the Plaintiff's EEO activity when she directed her assistant, Maureen Smythe, to notify the Plaintiff – who was out of the office on leave – of the TPD Director vacancy announcement, so that the

Plaintiff would not miss the opportunity to apply for the position.  These are not the actions of an individual harboring retaliatory feelings towards the Plaintiff, and they are at odds with the Plaintiff's attempt to infer that her non-selection a month later was motivated by retaliation.[2] The Plaintiff, therefore, has failed to establish a *prima facie* case of retaliation.

> ### 2.      The Plaintiff's Non-Selection Is Based Upon Legitimate Business Reasons

Assuming *arguendo,* that the Plaintiff were able to successfully establish a *prima facie* case of retaliation, her case would nevertheless fail because she cannot rebut the Defendant's articulated legitimate, non-retaliatory reasons for the Plaintiff's non-selection.

Ms. Schwimer selected Ms. Suttington over the Plaintiff because she believed Ms. Suttington to be the better candidate.  This belief was based upon the information she had received over the course of her tenure as Comptroller, and her experiences with each of the four candidates.  Ms. Schwimer had known both the Plaintiff and Ms. Suttington for about ten years, and she had known the remaining two candidates for at least 15 years.  7/17/08 Schwimer Dep. (Exhibit 6, p. 16).  For these reasons, Ms. Schwimer's choice of Ms. Suttington was "fairly easy . . . given [her] experience with each of the[] individuals."  *Id.*

Although "on paper everybody was qualified," *id.*, there were critical skills and abilities possessed by Ms. Suttington that Ms. Schwimer believed made Ms. Suttington the better

---

[2]   The only other reason that the Plaintiff offers in support of her belief that her non-selection was motivated by retaliation is equally unavailing in establishing a causal connection: a feeling, unsupported by any describable event, that Ms. Schwimer treated her differently after she engaged in EEO activity than before.  6/2/08 Plaintiff Dep. (Exhibit 8, p. 64-65.)  The post-EEO-activity treatment that the Plaintiff claims to show a change in treatment by Ms. Schwimer, however, is indistinguishable from the treatment that she herself describes receiving from Ms. Schwimer in 2000 (well before engaging in any EEO activity) in connection with Ms. Schwimer's overturning of the Plaintiff's denial of an employee's leave request.  EEO Hrg. Trans. (Exhibit 4, pp. 24-25); 6/2/08 Plaintiff Dep. (Exhibit 8, p. 37-39).

candidate for this position of leadership in the office.  7/17/08 Schwimer Dep. (Exhibit 6, pp. 22-24, 47-48).   Ms. Suttington was more responsive to the needs of the office, a better team player, more accountable for the work completed by her office, a better problem solver than the Plaintiff, and more flexible.[3]  7/17/08 Schwimer Dep. (Exhibit 6,  pp. 22, 47-48); EEO Hrg. Trans. (Exhibit 4,  pp. 99-100).  In addition, based upon her years of working with each candidate, Ms. Schwimer believed that Ms. Suttington's  supervisory skills were stronger than the Plaintiff's.  7/17/08 Schwimer Dep. (Exhibit 6, pp. 22, 47).  With all four candidates qualified on paper for the TPD Director position, it was these latter qualities that were the decisive factors in Ms. Schwimer's selection decision.  7/17/08 Schwimer Dep. (Exhibit 6, p. 24).   Based upon the applications and her years-long experiences with each candidate, Ms. Schwimer judged Ms. Suttington to be the superior candidate for the TPD Director position.

In response to the substantial record evidence, the Plaintiff attempts to discredit Ms. Schwimer's articulated reasons for her non-selection by challenging Ms. Schwimer's veracity and arguing that her reasons have "shifted over time."  These attempts cannot withstand scrutiny. Ms. Schwimer has been called upon four times to provide her reasons for her non-selection of the Plaintiff and her reasons have never changed.  On two occasions, Ms. Schwimer spoke of her reasons in general terms, and on the other two occasions, she elaborated on these reasons with more specifics as discussed above.  None of Ms. Schwimer's answers, however, has been

_____

[3]  Ms. Schwimer also has described Ms. Suttington as being more coachable than the Plaintiff.  Although the Plaintiff has vainly attempted to ascribe a negative connotation to this attribute,  Complaint ¶ 8, Ms. Schwimer has explained that from her perspective, which includes a sports-oriented background, "to be coachable is a really good thing. . . . "  7/17/08 Schwimer Dep. (Exhibit 6, pp. 33-35).  In Ms. Schwimer's view, when someone is coachable, "that person is a team player . . . [has] fire in the belly . . . takes constructive criticism [without] getting really defensive . . . and [i]s willing to learn."  *Id.*

inconsistent.  Ms. Schwimer judged each candidate based upon the applications and her own

experiences, and after careful consideration, determined that Ms. Suttington was the strongest

candidate.  The record is simply devoid of any evidence that Ms. Schwimer's judgment was

incorrect, that her reasons for selecting Ms. Suttington were pretextual, or that her true

motivation was retaliation.

> ### 3. The Plaintiff Was the Subject of Work-Related Complaints That Required Management Intervention And Ms. Suttington Had No Similar Complaints

Ms. Schwimer's reservations with regard to the Plaintiff's supervisory and leadership

skills were informed by work-related incidents involving the Plaintiff.   EEO Hrg. Trans.

(Exhibit 4, pp. 100-101); 7/17/08 Schwimer Dep. (Exhibit 6, pp. 25, 35).  In one incident, Ms.

Schwimer was required to intervene when the Plaintiff unreasonably denied a subordinate's

leave request. 7/17/08 Schwimer Dep. (Exhibit 6, p. 25); EEO Hrg. Trans. (Exhibit 4, pp. 113-

114, 127-128).   Michael Williams, a supervisee of the Plaintiff, sought Ms. Schwimer's

assistance in September 2000 when the Plaintiff refused to grant a one-day leave request.  EEO

Hrg. Trans. (Exhibit 4, pp. 100-101); Deposition of Michael Williams (Williams Dep.) (Exhibit

12, pp. 7-18).  Mr. Williams had purchased airline tickets, made hotel arrangements, and

submitted his leave request one week in advance. *Id*. at p. 7.  Nevertheless, the Plaintiff, who

was Acting Director of TPD at the time, denied Mr. Williams' leave request, claiming adherence

to an office coverage policy that had never before been followed or announced by the Plaintiff.

*Id.* at  pp. 12, 48-49).  Ms. Schwimer overturned the Plaintiff's leave decision and authorized Mr.

Williams to take his one day of requested leave.  7/17/08 Schwimer Dep. (Exhibit 6, p. 25); EEO

Hrg. Trans. (Exhibit 4, pp. 113-114, 128).

Suspecting that his denied leave request may have been due to a personality conflict with the Plaintiff, Mr. Williams further informed Ms. Schwimer about other problems that he had encountered under the Plaintiff's supervision.  Williams Dep. (Exhibit 12, pp. 16-27); EEO Hrg. Trans. (Exhibit 4, pp. 129-36, 143-44).  For example, Mr. Williams explained that the Plaintiff did not review his work in timely fashion (Williams Dep. (Exhibit 12, pp. 31- 42), and that the Plaintiff sometimes did not speak to him for weeks at a time after minor conflicts.  *Id.* at 23, 38. Consequently, from the three-month period that the Plaintiff was Acting Director of TPD, Ms. Schwimer was able to observe the Plaintiff's supervisory style and found it lacking.  7/17/08 Schwimer Dep. (Exhibit 6, pp.  25, 35).  For example, Ms. Schwimer noted that the Plaintiff did not hold herself accountable and would instead blame her staff for incidents or matters with respect to which she was ultimately responsible.  7/17/08 Schwimer Dep.(Exhibit 6, p. 35); EEO Hrg. Trans. (Exhibit 4, p. 99); 3/16/05 Schwimer Dep. (Exhibit 7 p. 31).  *Cf.*  Deposition of James McKay (McKay Dep.) (Exhibit 15, p. 22-24) (describing a situation with the Plaintiff in which he experienced her not taking responsibility for work, but rather blaming her staff).

In an earlier incident, Ralph Justus, Director of DOJ's Community Oriented Policing Services ("COPS") Office, complained about the Plaintiff's performance to Ms. Schwimer and Mr. Larry Hailes, who then was the Plaintiff's first-line supervisor. Deposition of Larry Hailes (Hailes Dep.) (Exhibit 13, pp. 16-17); 7/17/08 Schwimer Dep. (Exhibit 6, pp. 48-49).  Mr. Justus believed that the Plaintiff did not complete her assignments in a timely manner and lacked responsiveness, thus leading him to request the Plaintiff's removal from providing service to the COPS Office.  Hailes Dep. (Exhibit 13, p. 17).  In response to this complaint, Mr. Hailes was tasked with working more closely with the Plaintiff "to improve her performance."  *Id.* at 17-18.

Unlike the case with the Plaintiff, neither Ms. Schwimer nor Mr. Hailes (who then was one of Ms. Suttington's immediate supervisors at OJP, Hailes Dep. (Exhibit 13, pp. 14-15)) ever received any complaints regarding Ms. Suttington's performance or supervisory skills. 7/17/08 Schwimer Dep. (Exhibit 6, pp. 35-36, 47); Hailes Dep. (Exhibit 13, pp. 19-20).  Although these incidents involving the Plaintiff did not make her a bad employee in their eyes, or disqualify her from consideration for the TPD Director position, they informed  Ms. Schwimer's determination that Ms. Suttington was the better candidate.  Ms. Schwimer has stated that the Plaintiff "was just as good a candidate as all the rest [but] Joanne [Suttington] . . . [she] believed was better." 7/17/08 Schwimer Dep. (Exhibit 6, p. 33).  Ms. Schwimer "had no complaints against Joanne [Suttington], not even minor complaints . . .[but she] had minor complaints about [the Plaintiff]." *Id.* at 47.   Although these complaints about the Plaintiff were not "severe  enough to document," *Id.* at 46, they contributed to Ms. Schwimer's decision that "Joanne [Suttington] was over the top."  *Id.* at 47.  As noted earlier, Ms. Schwimer had acknowledged the Plaintiff's abilities in completing special projects (3/16/05 Schwimer Dep. (Exhibit 7, pp. 30-31)), such as translating the Financial Guide into Spanish, for which the Plaintiff had received a cash award (after having engaged in EEO activity).  7/17/08 Schwimer Dep. (Exhibit 6,  p. 26).  However, the TPD Director position required someone who could "multitask and respond to lots of different requests in a timely fashion with little guidance . . . Joanne [Suttington] could do that . . . and was the best qualified candidate."  3/16/05 Schwimer Dep. (Exhibit 7, p. 31).

Ms. Schwimer was not alone in her opinion that Ms. Suttington was the best candidate. Mr. Hailes believed that "Ms. Schwimer selected the best candidate . . . based upon his experience supervising both. . .[and] working with both . . . [for] more than five years. " Hailes

Dep. (Exhibit 13, pp. 8, 16).   Although Mr. Hailes believed that the Plaintiff was a "good

employee," he believed that Ms. Suttington was  "very, very, very good."  Hailes Dep. (Exhibit

13, pp. 16, 23).  Similarly, Mr. James McKay, then OJP's Deputy Comptroller, who had worked

with Ms. Suttington for a number of years (James McKay's Responses to the Investigator's

Questions (McKay Resp.) (Exhibit 14, pp.1, 18-19)), supported her selection, and found her to

be "always responsive . . . [and] a very good supervisor."  McKay Dep. (Exhibit 15 , pp. 21-22).

On the other hand, Mr. McKay found that the Plaintiff was defensive and lacked accountability.

*Id.* at 23-24; McKay Resp. (Exhibit 14, p. 19-20).  Therefore, undisputed material facts establish

that Ms. Schwimer's reasons for selecting Ms. Suttington over the Plaintiff were grounded in

real and concrete experiences, having nothing to do with retaliation.  *Cf. Stewart v. Ashcroft*, 352

F.3d 422, 428-30 (D.C. Cir. 2003) (employer's legitimate business reason for selection was

based on selecting official's observations of employees and determination of what were the most

critical qualities for the selectee for the position).

### 4.      The Plaintiff's Non-Selection for the TPD Director Position Is Consistent With Her Non-Selection Under an Announcement Issued Prior to Any of Her EEO Activity

In September 2000, it is undisputed, that the Plaintiff applied and was interviewed for the

position of TPD Director prior to her involvement in any EEO activity.  EEO Hrg. Trans.

(Exhibit 4, p. 51); 2/10/04 Plaintiff Dep. (Exhibit 10, p. 72).  Although this vacancy

announcement was later cancelled by Ms. Schwimer when she chose to reassign an existing

director, the interview panel unanimously recommended Jerry Conty, and not the Plaintiff, as the

best candidate for the TPD Director position.  Hailes Dep. (Exhibit 13, p. 13).  Although the

Plaintiff had made the list of qualified candidates, she failed to provide responsive answers

during an oral interview.  *Id.* at 16.  This failure caused the Plaintiff to be ranked the lowest of all

the qualified candidates, which included one candidate who did not even work at OJP.  McKay

Dep. (Exhibit 15, p. 18); Hailes Dep. (Exhibit 13, p. 16).  Significantly, although the Plaintiff

was the Acting Director of TPD at the time, the selection panel did not recommend the Plaintiff

for the TPD Director position.  EEO Hrg. Trans. (Exhibit 4, pp. 52-53).  Therefore, even before

the Plaintiff had engaged in any EEO activity, a review panel had concluded that the Plaintiff

was not the best candidate for the TPD Director position.

### 5.    The Selectee Was Not Interviewed

Ms. Schwimer made her selection without interviewing any of the candidates.  The

Plaintiff's assertion that Ms. Suttington was interviewed is incorrect.  7/17/08 Schwimer Dep.

(Exhibit 6, p. 23); Schwimer Resp. (Exhibit 2, p. 11); McKay Dep. (Exhibit 15, p. 28).  Over a

year after the selection was made, Ms. Suttington stated that Ms. Schwimer had "interviewed"

her for the position.  When she subsequently testified at the administrative hearing, Ms.

Suttington described this so-called "interview" as a casual, brief, and impromptu conversation

that took place as a segue from a work-related meeting with Ms. Schwimer.  EEO Hrg. Trans.

(Exhibit 4, pp. 147-50).  Ms. Suttington also indicated that, to her, being called by a prospective

employer and asked to simply verify her name was something that she considered to be an

"interview."  *Id.* at 149.  Ms. Schwimer emphatically denies having interviewed Ms. Suttington

or any other candidate for the TPD Director position.  Even if Ms. Suttington correctly

remembers an informal conversation that Ms. Schwimer does not, this alleged conversation does

not prejudice the Plaintiff or lessen the substantial record evidence supporting the Plaintiff's

non-selection.  *See Skelton v. ACTION*, 668 F. Supp. 25, 30 (D.D.C. 1987) (The selecting

official's "misremembering" details about the selectee, including his qualifications, does not amount to any evidence of unlawful discrimination).  As discussed previously, the Plaintiff was judged on separate occasions by a selection panel (before she had engaged in any EEO activity), and by Ms. Schwimer, and on each occasion she was not selected for the TPD Director position based upon legitimate business reasons.  In addition, the Plaintiff, sharply unlike Ms. Suttington, was the subject of work-related complaints reported to Ms. Schwimer  that required management intervention.

Even assuming *arguendo*, that Ms. Schwimer had interviewed Ms. Suttington, the Plaintiff still cannot establish that she even was prejudiced, not to mention prejudiced because of her prior EEO activity.  Ms. Schwimer did not interview Ms. Smythe or Mr. Conty, and neither of them had engaged in any EEO activity.  Thus, there is no basis to believe that Ms. Suttington was "interviewed," and the Plaintiff was not, because of the Plaintiff's prior EEO activity.[4]

**6.**      **The Plaintiff has Failed to Rebut the Defendant's Legitimate Reasons for Her Non-selection or Show Pretext**

Once the employer successfully presents a legitimate, non-retaliatory reason for its

---

[4]  To the extent that the Plaintiff attempts to argue, as she has previously, that "interviewing" Ms. Suttington, but not the Plaintiff, was a violation of the Defendant's guidelines, such alleged violation is of no moment because the other candidates, who had not engaged in earlier EEO activity, were treated the same.  *See Fischbach v. District of Columbia Department of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("[T]he Department's having followed a procedure other than that prescribed by its regulations lends no support at all to the plaintiff's inference that its stated reason for [the selection] is pretext.").  *See also Randle v. City of Aurora*, 69 F.3d 441, 454-55 (10th Cir. 1995) (when the employer's selection is based on the relative qualifications of the applicants, that the employer failed to follow internal procedures is not evidence of a discriminatory motive).  Such allegation by the Plaintiff, anyhow, has no basis in fact: the Defendant's guidelines did not require Ms. Schwimer to interview all of the candidates if she interviewed any of them, because the TPD Director position, as part of the Office of the Comptroller's management, was not a bargaining-unit position, and thus the interview guidelines did not apply.  Collective Bargaining Agreement May 1984 as Supplemented through December 1991 (Exhibit 16, pp. 4, 33, 43).

14

actions, the presumption created by the *prima facie* case is rebutted and drops from the case. *Cf.*

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citation omitted); *Brady*, 520

F.3d at 494 (noting that "the prima facie case is a largely unnecessary sideshow").   A

defendant's burden "is one of production, meaning it 'need not persuade the court that it was

actually motivated by the proffered reasons.'" *Barnette*, 453 F.3d at 516 (quoting *Burdine,* 450

U.S. at 254).   Upon such a showing by a defendant, the court considering a motion for summary

judgment need resolve only one question: "Has the employee produced sufficient evidence for a

reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual

reason and that the employer intentionally [retaliated] against the employee[?]"  *Brady*, 520 F.3d

at 494.  In other words, did the plaintiff "show '*both* that the reason was false, *and* that . . .

[retaliation] was the real reason.'" *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007)

(alterations in original and internal quotations omitted) (quoting *St. Mary's Honor Ctr.*, 509 U.S.

at 515).  The court must consider whether a jury could infer retaliation "from the plaintiff's

prima facie case and any other evidence the plaintiff offers to show that the actions were

[retaliatory] or that the non-[retaliatory] justification was pretextual."  *Smith v. District of*

*Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005).

     While the Plaintiff may believe that she was the better qualified candidate, this does not

discredit Ms. Schwimer's legitimate explanation for selecting Ms. Suttington. *See Hastie v.*

*Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000), *aff'd sub nom.*, *Hastie v. Potter*, 2001 WL

793715, at *1 (D.C. Cir. June 28, 2001) (finding no genuine issue of material fact where the sole

evidence plaintiff provided was "her own self-serving and conclusory statement" that she was

more qualified); *Waterhouse v. Dist. of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), *aff'd*, 298

F. 3d 989, 997 (D.C. Cir. 2002) (A "[p]laintiff cannot establish pretext simply based on her own subjective assessment of her own performance, for 'plaintiff's perception of h[er]self, and of h[er] work performance, is not relevant. It is the perception of the decisionmaker which is relevant.'") (citation omitted) (brackets in original).  Even assuming *arguendo* that the Plaintiff were more qualified, a court cannot infer discriminatory intent absent a showing that the Plaintiff's qualifications were far superior to those of Ms. Suttington. *See Stewart*, 352 F.3d at 429; *Vasilevsky v. Reno*, 31 F. Supp. 2d 143, 150 (D.D.C.1998) ("It is the plaintiff's duty to put forth evidence of discrimination, not to 'quibble about the candidates' relative qualifications.'") (citing *Skelton v. ACTION*, 668 F. Supp. 25, 26 (D.D.C.1987), *aff'd*, 1988 WL 156306, at *1 (D.C. Cir. May 12, 1988).  The Plaintiff cannot make that showing.

According to Ms. Schwimer, Ms. Suttington was selected because she was a better-qualified candidate than the Plaintiff.  This is the quintessential legitimate, non-discriminatory reason in a non-selection case. *See Barnette*, 453 F.3d at 517 (A reasonable jury can only infer discriminatory intent when an employer fails to select the "markedly" or "significantly" more qualified candidate.).  The Supreme Court has recognized that an employer has broad discretion to carry out personnel decisions, and that it should not be second-guessed by a reviewing authority absent evidence of suspect motivation. *See Burdine*, 450 U.S. at 259.  Here, there is no evidence of suspect motivation.  Clearly, Ms. Schwimer had legitimate, non-discriminatory reasons for not selecting the Plaintiff for TPD Director in OJP's Office of the Comptroller.

The District of Columbia Circuit Court has emphasized that a court "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive." *Fishbach v. District of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996); *see Marshall*

16

*v. Fed. Express Corp.*,130 F.2d 1095, 1100 (D.C. Cir. 1997); *Mungin v. Katten Muchin & Zavis*, 116 F. 3d 1549, 1556 (D.C. Cir. 1997).  Rather, "[s]hort of finding that the employer's stated reason was indeed a pretext . . . the court must respect the employer's unfettered discretion to choose among qualified candidates." *Mungin*, 116 F.3d at 1556 (quoting *Fishbach*, 86 F.3d at 1183).

In a non-selection case, pretext may be demonstrated by showing that the qualifications of the plaintiff are **far** superior to those of the selectee. *Bauer v. Bailar*, 647 F.2d 1037, 1048 (10th Cir. 1981) (emphasis added). *See also Barnette*, 453 F.3d at 517 (finding no evidence of pretext even where selectee had less supervisory experience over all.)  Only where a reasonable employer would have found the plaintiff "**significantly better qualified**" can a fact finder infer that the employer consciously selected the less qualified applicant. *Carter v. George Washington Univ.*, 387 F.3d 872, 881 (D.C. Cir. 2004) (emphasis added) (quoting *Aka*, 156 F.3d at 1294); *see Walker v. Dalton*, 94 F. Supp. 2d, 8, 16 (D.D.C. 2000) ("slight questions of comparative qualifications do not warrant jury trial").

In this context, in order to find evidence of pretext, the Court would have to be convinced that the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004). Essentially, in order to show pretext, a plaintiff must show that defendant's reason for not selecting her were a lie. *Crim v. Bd. of Educ. of Cairo School Dist. No. 1*, 147 F.3d 535 (7th Cir. 1998).  Merely casting doubt on an employer's stated reason for its employment decision is insufficient to establish pretext. *Id.*; *see Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672,

17

677 (7th Cir.1997) ("[A] reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination.") (quotations and citations omitted). Moreover, "[an employer's] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515.

Here, the record is replete with evidence that the Plaintiff's non-selection was based on a legitimate, non-retaliatory reason, to wit, Ms. Suttington's superior supervisory and management skills.   With the burden shifted back to the Plaintiff, however, she has no evidence to offer to prove that the Defendant's stated reasons for her non-selection were pretextual.

In her Complaint herein, the Plaintiff merely asserts that the Defendant's articulated reasons for her non-selection are pretextual because "Plaintiff was demonstrably better qualified . . . than the selectee in terms of experience, training and education."  Complaint at ¶ 9.  Other than her own self-serving and irrelevant opinion that she was more qualified than Ms. Suttington, the Plaintiff has no evidence, even after full discovery in both the administrative proceeding as well as this federal action, that rebuts the substantial record evidence supporting  Ms. Schwimer's selection of Ms. Suttington as the better candidate for the TPD Director position. 6/2/08 Plaintiff Dep. (Exhibit 8, pp. 61-63, 77-78, 80-83).

In her testimony at the administrative hearing, the Plaintiff cites as two of her major accomplishments while serving as acting director of TPD, her work in revising the Agency's Financial Guide[5]  and the Office of the Comptroller's "briefing book."  EEO Hrg. Trans. (Exhibit 4,  pp. 18-20).  Despite taking personal credit for these projects, however, the Plaintiff

---

[5]  The revision to the Financial Guide was an entirely separate project from that of translating the Guide into Spanish, for which Ms. Schwimer approved the Plaintiff for a cash award in June 2002.

acknowledged on cross-examination that those were collaborative projects, involving other divisions and various other individuals.  EEO Hrg. Trans. (Exhibit 4, pp. 48-50).  The Plaintiff's disagreement with her performance evaluations from three separate managers of OJP's Office of the Comptroller similarly reflects her inflated self-assessment.  EEO Hrg. Trans. (Exhibit 4, pp. 52-55, 68-70).  Most telling of all is the fact that the Plaintiff's self-assessment also was variously at odds with the assessment of her by every member of the Office of the Comptroller's senior management: when advised of Ms. Schwimer's selection of Ms. Suttington, Mr. Hailes and Mr. McKay concurred that she was the better candidate for the TPD Director position.  Hailes Dep. (Exhibit 13, pp. 16, 23-24); McKay Resp. (Exhibit 14, pp. 18-20); McKay Dep. (Exhibit 15, pp. 21-24).

Title VII does not make a federal court a "'super-personnel department that reexamines an [employer's] business decisions,'" *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)), and the Plaintiff's own self-assessment – at odds with the assessment of all of her supervisors in the Office of the Comptroller – does nothing to suggest that Ms. Schwimer's articulated reasons for her selection of Ms. Suttington were a pretext for retaliation.  *See, e.g., Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980) ("[Plaintiff's] perception of himself, however, is not relevant."); *Waterhouse*, 124 F. Supp. 2d at 7;  *Smith v. Chamber of Commerce of U.S.*, 645 F. Supp. 604, 608 (D.D.C. 1986).

## V.  CONCLUSION

The Plaintiff has no evidence that would establish the existence of any material fact in dispute or that would call into question the legitimate reasons for Ms. Schwimer's selection of Ms. Suttington.  It is well-established that personal speculation and subjective judgment of

19

illegal motivation do not create a factual issue precluding summary judgment. *Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999) (plaintiff's own speculation and allegations do not overcome a defendant's motion for summary judgment).   Rather, to survive summary judgment, a plaintiff is obligated to present *substantial* and *credible* evidence of retaliation. *Cf. Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Accepting [some] conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."); *Hastie*, 121 F. Supp. 2d at 77 ("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'"); *Woodruff v. DiMario*, 164 F. Supp. 2d 1, 5 (D.D.C. 2001).[6] *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (plaintiff's own naked opinion and conclusory allegations, without more, are not enough to withstand summary judgment); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (conclusory allegations of discrimination could not withstand summary judgment based on affidavits and depositions). Thus, the Plaintiff's speculation and subjective judgment that she was retaliated against because of her EEO activity is insufficient to defeat the Defendant's summary judgment.

---

[6]Additionally, there will be "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was [retaliatory]." *Weigert v. Georgetown University*, 120 F. Supp. 2d 1, 22 (D.D.C. 2000) (quoting, *Reeves*, 530 U.S. 133).

Respectfully submitted,


____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS,. Bar #434122
Assistant United States Attorney


____/s/_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7224

Of Counsel:
JASON P. COOLEY
MARIE E. BURKE
MELINDA HART
Office of Justice Programs
Office of the General Counsel