**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ADA GONZALES,<br><br>    Plaintiff,<br><br>       v.<br><br>MICHAEL B. MUKASEY<br>Attorney General<br>of the United States,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No.  07–0676 (PLF)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Ada Gonzales, hereby responds to Defendant's Motion for Summary Judgment. For the reasons stated herein, the Defendant's motion is without merit and must, accordingly, be denied.

## I.    FACTUAL BACKGROUND

Plaintiff was employed by the Office of Justice Programs' ("OJP") Office of the Comptroller as a financial analyst in June 1995. Ex. 4 at 28.  Around 1997, Plaintiff was promoted to a GS-13 supervisory position. Ex. 4 at 29.  In March of 1999, Plaintiff received a GS-14 position as branch manager in the financial management division supervising over 30 employees. Ex. 9 at 42–43 (Plaintiff's Affidavit, dated November 22, 2002).   In March of 2000, Plaintiff was assigned a Branch Manager to the Training and Policy Division of the OJP's Office of the Comptroller. Ex. 9 at 43.  When the Training and Policy Division director, Stacy Worthington, retired in August 2000, Plaintiff was the Acting Director until the position was

filled in November 2000 by Travis McCrory.  Ex. 9 at 21–22.

 The vacancy for the Training and Policy Division Director was announced in 2000, but the selecting official, Comptroller Cynthia Schwimer, made the decision to bring in McCrory as a lateral transfer.  Ex. 8 at 5, 20.  Plaintiff made the list of eligibles and was interviewed by Schwimer.  Ex. 8 at 20-21.  However, Schwimer made the decision to laterally transfer McCrory rather than promote any of the applicants listed on the certificate of eligibles.  Ex. 8 at 20-21.

 On February 27, 2002, Plaintiff made her initial contact with the EEO office regarding a complaint of discrimination based on gender, age, and national origin against the OJP Office of the Comptroller.  See Ex. 10 (Complaint of Discrimination, dated June 16, 2002); Ex. 11 at 2 (EEO Report of Counseling).  On April 16, 2002, EEO Officer Lori Bledsoe emailed Schwimer and McCrory to inform them of Plaintiff's EEO contact.  Ex. 12 at 2 (Schwimer's Responses to Investigator's Questions); Ex. 13 (Email from Lori Bledsoe to Schwimer and McCrory).

 From March 13, 2002 until June 24, 2002, Plaintiff was out of the office on medical leave.  Ex. 4 at 31-32.  During this time, Plaintiff continued with her EEO counseling which resulted in her filing of a formal complaint on June 14, 2002.  *See* Ex. 10.

 While she was on leave, Plaintiff was informed by a colleague that there was a vacancy for the Training and Policy Division Director position.  Ex. 4 at 40.  Subsequently, Plaintiff learned that Maureen Smythe, Schwimer's assistant, had left a message for her about the vacancy announcement.  Ex. 4 at 41.  Smythe also sent an email to Plaintiff's work email account informing her of the vacancy announcement.  Ex. 2.  However, as Plaintiff was away on medical leave she did not receive the email until she returned on June 24th.  *See* Ex. 2 at 2.

 The opening date of the vacancy announcement was June 4, 2002, and it closed June 18,

2002. Ex. 14 at 1 (Vacancy Announcement # JP-02-034-LS).  As Plaintiff was out of the office,

she did not have access to the appropriate files and could only put together an application packet

with the assistance of a colleague.  Ex. 4 at 41-42.  Plaintiff's application packet was timely

received by the Agency on June 17, 2002.  *See* Ex. 15 at 1 (Plaintiff's Application Packet).

Sometime in June, after receiving Joanne Suttington's application packet, Schwimer

interviewed her regarding the position and her qualifications.  Ex. 5 at 24-26.  Plaintiff on the

other hand was never interviewed in 2002 regarding the position.  Ex. 16 at 35-36 (EEO H.T.).

Schwimer officially selected Suttington for the position on July 16, 2002.  Ex. 17 (Notification of

Personnel Action).

Plaintiff was by far the most qualified candidate for the position and was viewed as the

next in line for the position due to her vast experience with training and policy development.  Ex.

4 at 18-21.  Schwimer admits that Plaintiff was qualified for the position, but reasons that

Suttington was the better candidate for the position for extremely subjective reasons such as she

was more of a "team player" and more "responsive" than Plaintiff.  Ex. 7 at 22.  Unfortunately

for Plaintiff, she had filed an EEO complaint and in fact, Schwimer's reasons for choosing

Suttington were mere pretext to cover her retaliatory motives in Plaintiff's non-selection.

## II.    <u>STANDARD OF REVIEW</u>

### A.    **Legal Standard for Summary Judgment**

Summary judgment is appropriate only where the trier of fact determines there no genuine

dispute of material fact exists under the substantive law.  *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255 (1986).  "A dispute over a material fact is 'genuine' if 'the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'"  *George v. Leavitt*, 407

F.3d 405, 410 (D.C. Cir. 2005)(quoting *Anderson*, 477 U.S. at 248). The role of the trier of fact is not to weigh the evidence or make factual determinations when ruling on motions for summary judgment. *Anderson*, 477 U.S. at 248-49. Rather, the trier of fact is to solely determine whether a genuine factual dispute exists. *Id.*

The burden for the party moving for summary judgment is an onerous one. The law provides that all material facts and reasonable inferences must be viewed by the fact finder in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 389 U.S. 144, 157 (1970); *George*, 407, F.3d at 410.

**B.   Legal Standard for Title VII Retaliation Claims**

The standard to establish a prima facie case of retaliation is not an onerous burden for the Plaintiff. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1980). In order to establish a prima facie case of retaliation, a Plaintiff must show: (1) she, the employee, engaged in a statutorily protected activity; (2) an adverse action was taken against her; and (3) a causal connection existed between the two. *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984). The temporal proximity of the employer's gaining knowledge of the activity and the adverse action can, by itself, be sufficient to establish causality. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Once a prima facie case has been established, the burden shifts to the Defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse action. *McKenna*, 729 F.2d at 790. The Defendant's explanation for its actions must be legally sufficient to justify a judgment in its favor. *Burdine*, 450 U.S. at 255.

If the Defendant is able to articulate such a reason, the *McDonnell Douglas* framework--

4

with its presumptions and burdens -- "disappears," and the sole remaining issue is whether

discrimination occurred. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 144 (2000).  At

this point, the Plaintiff is afforded the opportunity to show that the employer's reasons were

merely pretext for retaliation. *McKenna*, 729 F.2d at 790.  The Plaintiff may do this by showing

that the proffered explanation was unworthy of credence. *Burdine*, 450 U.S. at 256.  Despite the

fact that the presumption of discrimination disappears, the trier of fact may still consider the

evidence presented by the Plaintiff in establishing a prima facie case and any inferences

reasonably drawn therefrom in determining whether the Defendant's explanation is pretext for

discrimination. *Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d 210, 214 (D.D.C. 2008)(*citing*

*Reeves*, 530 U.S. at 147).

## III.   **ARGUMENT**

Summary judgment is inappropriate in this matter as Plaintiff has established a prima

facie case of retaliation and there is a genuine dispute of material fact with regard to Defendant's

proffered explanation for the non-selection of the Plaintiff.  *See Anderson*, 477 U.S. 242.

### A.   **Plaintiff Has Clearly Established a Prima Facie Case of Retaliation**

As the Defendant concedes, Plaintiff has established the first two prongs of the prima

facie case as her contact with the EEO office is protected activity and her non-selection for the

position of the Director of the Training and Policy Division was an adverse action.  Defendant's

Br. at 5.  Plaintiff has also established a clear causal connection between the two acts due to the

temporal proximity between the selecting official becoming aware of the protected activity and

the non-selection.

A Plaintiff may satisfy the third prong of the prima facie case by showing that the

employer had knowledge of the protected activity and the adverse action took place shortly thereafter. *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (citing *Mitchell v. Baldridge*, 759 F.2d 80 (D.C. Cir. 1985)). With respect to this showing the Plaintiff's burden is not great. *Holcomb*, 433 F.3d at 903. It is only required that the Plaintiff present adequate facts to permit an inference of retaliatory motive. *Id.* The D.C. District Court has recently noted a rule of thumb for inferring causation: generally, any amount of time under three months between the protected activity and the adverse action will support an inference of causation on temporal proximity alone. *Hamilton v. Paulson*, 542 F. Supp.2d 37, 58 (D.D.C. 2008).

Non-selection cases have become an exception to the rule because of the nature of the government hiring procedures. As the timing is dictated by government procedures, it may be that the employer took action at the first possible opportunity despite the passing of several months. *Kalinoski v. Gutierrez*, 435 F. Supp.2d 55, 70 (D.D.C. 2006)(finding a three month gap in time from the filing of an EEO complaint until the non-selection of the Plaintiff was sufficient to establish a causal connection). Employers cannot pick and choose the time it would take its retaliatory action, and where a defendant retaliates at the first opportunity presented, a substantial gap in time should not preclude the Plaintiff from establishing a prima facie case. *Id.; see also Pardo-Kronemann*, 541 F. Supp.2d at 218.

In this case, Schwimer was informed of Plaintiff's EEO activity on April 16, 2002. Ex. 13. Three months, or 13 weeks, later, on July 16, 2007, she formally selected Suttington for the Director position at the expense of Plaintiff. Ex. 17. Under *Kalinoski*, this alone is sufficient to establish a causal connection and make out her prima facie case of retaliation.

In addition, Plaintiff was out of the office on sick leave for the majority of that 13 weeks

between the time Schwimer was notified of Plaintiff's EEO contact and her non-selection. Plaintiff's leave began just weeks after she initiated contact with an EEO counselor in February and continued through June 24, 2002. Ex. 4 at 31-32. As Schwimer made her selection decision within 22 days of Plaintiff's return, the clock should essentially be tolled for the gap calculation for establishing temporal proximity. Plaintiff's absence made any other retaliatory acts by Schwimer difficult, if not impossible, for 10 of the 13 weeks between Schwimer's notice of the activity and the adverse action. Because of her extended absence and her immediate non-selection upon return, Plaintiff has presented more than sufficient evidence to establish a causal connection between her protected activity and her non-selection.

The Defendant presents various acts as evidence that Schwimer lacked any retaliatory motive in an attempt to convince the Court that it should not draw an inference of discrimination based on Plaintiff's prima facie case. *See* Defendant's Brief in Support at 6. However, Defendant's version of the facts is incomplete and therefore misleading. In fact, Schwimer's actions are evidence that the proffered reasons for Plaintiff's non-selection are pretext for retaliation.

First, Defendant argues that Schwimer approved a cash award for the Plaintiff in June 2002. Defendant's Br. at 6. However, Defendant fails to mention that this award was given to a group of three employees for managing the reformatting of the Financial Guide. Ex. 3 at 58. Also, it was McCrory, Plaintiff's first-line supervisor, who was the proposing official and Schwimer simply signed off on all three of the awards. Ex. 1 at 5-6. As such, nothing can be inferred from her approval of the awards.

Defendant also attempts to paint Schwimer as encouraging Plaintiff to apply for the

7

position. This is inaccurate. Schwimer's assistant, Smythe left a message with Plaintiff's

daughter, who was recovering from a stroke and open heart surgery, and emailed Plaintiff's work

account. Ex. 4 at 4; Ex 2. Plaintiff did not receive the message, nor did she check her email

while on leave. She received the email the day she returned to work, which was subsequent to

the closing of the vacancy announcement. *See* Ex. 2 at 2.

Plaintiff was fortunate enough to have a colleague contact her to inform her of the

vacancy announcement. Ex. 4 at 41. The other hurdle Plaintiff faced was compiling her

application package from outside the office. Plaintiff could only complete the package and ship

it in time with the help of a colleague in the office. Ex. 4 at 41. Schwimer's "efforts" to inform

Plaintiff of the opening and her approval of the award are hardly the goodwill gestures the

Defendant would make them out to be. Regardless, the Plaintiff has established a prima facie

case of retaliation by showing that Schwimer retaliated against Plaintiff at the first opportunity

presented.

**B.     Defendant's Stated Reasons for Non-Selection are Pretextual**

Once a plaintiff has established a prima facie case of discrimination, the burden shifts to

the employer to "produce evidence that the plaintiff was rejected ... for a legitimate,

nondiscriminatory reason." *Burdine*, 450 U.S. at 254. Defendant has not carried its burden of

production to provide evidence to support a legitimate, nondiscriminatory explanation for its

decisions to deny Plaintiff's requests for promotion. Therefore, as Defendant has failed to meet

its burden of production, an inference of discrimination is appropriate regarding the denials of

Plaintiff's requests for promotion. *See, e.g., Forman v. Small*, 271 F.3d 285, 301 (D.C. Cir.

2001) (reversing summary judgment where employer "failed to meet its burden of production to

set forth a legitimate, nonretaliatory reason" for employment action).

In addition, Plaintiff has provided evidence that casts doubt on the veracity of Defendant's explanations for its non-selection of Plaintiff. Evidence that Defendant's proffered explanations for its non-selection of Plaintiff may be "unworthy of credence [is] probative [and] may be quite persuasive" proof of intentional discrimination. *Reeves*, 530 U.S. 133. Indeed, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* For the reasons stated in establishing Plaintiff's prima facie case and the reasons outlined below, Defendant's "legitimate" explanation is unworthy of credence and the Defendant's motion must be denied.

1.  Plaintiff was the Superior Candidate for the Position

Defendant attempts to rebut Plaintiff's prima facie case by arguing that the selectee, Joanne Suttington, was the superior candidate. However, Plaintiff was the "significantly better qualified candidate" and as such the Defendant's reason was mere pretext for retaliation.

In a non-selection case, pretext can be shown "if a factfinder can conclude that a reasonable employer would have found the plaintiff to be *significantly better qualified* for the job, but this employer did not." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998)(emphasis added). From such a conclusion, the factfinder can infer that discrimination was the real reason for the employers selection of the less qualified candidate. *Id.* While the employer certainly has a right to decide among qualified candidates, without the factfinder reexamining an already difficult decision, those decisions that rely heavily on a subjective explanation, such as a evaluation of "interpersonal skills," warrant a higher level of scrutiny.

9

*Gipson v. Wells Fargo N.A.*, 460 F. Supp.2d 15, 25 (D.D.C. 2006) (denying summary judgment as the disparity in the candidates qualifications combined with the highly subjective explanation put forth by the employer were sufficient to create a material dispute as to whether the employer's proffer was pretextual). The disparity in qualifications is not required to be "overwhelming" to survive summary judgment, but only significant enough to support a jury finding that the Plaintiff was the significantly better qualified for the position. *Id.*

Plaintiff is significantly better qualified for the position of the Director of the Training and Policy Division ("TPD") for a number of substantive reasons. First, Plaintiff was the employee directly in line for the position and had several months experience as the Acting Director in 2000. Ex. 4 at 19-20. At the time of application, Plaintiff had seven years of experience in the Office of the Comptroller including her tenure as a branch manager in both the Financial Services Division and the TPD, the latter being her position at the time of application. Ex. 15 at 1. She held an MBA with an emphasis in Finance. Ex. 15 at 8.

Second, the first responsibility listed for the Director of TPD was directing "nation-wide financial management training and technical assistance programs . . ." Ex. 18 at 2 (Position Description). From the first sentence, it is clear that Plaintiff has had significantly more experience in the relevant fields and in the position itself. Plaintiff had experience in training and developing policy at a national level as a result of her position as branch manager at TPD, including personally conducting grant management seminars and training. Ex. 4 at 18-21.

The selectee, Suttington, on the other hand, had never worked in the TPD, nor did she have any experience with training or policy administration beyond her department. *See* Ex. 19 at 4 (Suttington Application Packet). Her experience was limited to financial reviews of grant

10

applications and reviewing cost allocations.  Ex. 19 at 4.

Third, Plaintiff had more accomplishments than the selectee.  She holds an MBA in Finance, graduated from OPM's Executive Development Program, attended seminars on wide range of management, leadership and grant management related fields.  *Compare* Ex. 15 with Ex. 19.

Fourth, several veteran agency employees testified as to Plaintiff's superior management ability.  Patricia Cuffee, a long-time employee of OJP, testified that Plaintiff was a good supervisor, who was available to meet with her when she had questions and who provided clear instructions and time frames for tasks.  *See* Ex. 16 at 73-81.  Another employee, Andrea McIntosh, described Plaintiff's managerial style as "fully involved, mentoring, very positive, not – not like a dictator, but more bringing us in and asking for our help and empowering us."  Ex. 16 at 155.  She further explains that Plaintiff was a "very good" multi-tasker, and an accountable person.  Ex. 16 at 155-56.  Plaintiff's best skill as a supervisor, according to McIntosh, was her ability to remain positive and treat the staff in a positive manner.  Ex. 16 at 156.  All of these skills and accolades show that not only was Plaintiff qualified for the position of Director of the Training and Policy Division, but she was the most qualified and significantly more so than the selectee.

Further, the Defendant's case for the selectee is based on highly subjective grounds rather than documented qualifications.  *See* Defendant's Br. at 7.  Schwimer allegedly chose Suttington for vague and immeasurable reasons such as she was a "team player," and "her supervisory skills were better" than Plaintiff's skills.  Because Plaintiff's qualifications on paper show that she was "significantly better qualified" than the selectees and the Defendant could only justify its choice

through such highly subjective terms, there is a material dispute regarding whether the Defendant's explanation was pretext sufficient to overcome summary judgment. *See Gipson*, 460 F. Supp.2d at 25.

Also, in attacking a "qualifications-based" explanation, the plaintiff is not limited to mere comparison of her qualifications to the selectees. *Aka*, 156 F.3d at 1295. The plaintiff may expose other flaws in the defendant's explanation such as contradictory accounts of the employer's decision that tend to show the explanation was fabricated or that the employer's explanation misstates the selectee's qualifications. *Id.* Further, a "suspicion of mendacity" is enough to support a finding of pretext and discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511(1993).

There have been various occasions when Schwimer's story or explanation of the hiring procedures has varied with the testimony of Suttington, the selectee, which brings into question Schwimer's credibility with respect to the entire process and supports a finding of pretext. First, Schwimer was not truthful when she repeatedly denied interviewing Suttington. *Compare* Ex. 16 at 98, 107, 109 (Schwimer denies interviewing anyone, including Suttington) with Ex. 16 at 147-51 (Suttington confirms that Schwimer interviewed her).

Schwimer was also not truthful when she denied that she discussed the selection with anyone before making it. *Compare* Ex. 16 at 98 (Schwimer denies discussing selection) with Ex. 16 at 147-52 (Suttington testifies that Schwimer interviewed her in June 2002, "a week or so" after her application was submitted).

Schwimer was not truthful when she denied knowing who had applied until the day she received and completed the selection paperwork. *Compare* Ex. 16 at 96 (Q: "Prior to receiving

the cert list on or about July 16th, did you know who had applied for this position?" A: "No.") with Ex. 16 at 147-52 (Suttington testifies that Schwimer interviewed her in June 2002, "a week or so" after her application was submitted).

Schwimer misstated Suttington's qualifications in saying Suttington had both a CPA and an MBA (although she later corrected this misstatement on an errata sheet) while it was actually Plaintiff who held the higher qualification, an MBA. Ex. 12 (ROI Tab D4 at 11: Schwimer's Responses to EEO Investigator). Each of these examples demonstrates Schwimer's utter lack of credibility, which in itself is sufficient to find pretext and retaliation. *See Hicks*, 509 U.S. 502.

The fact a reasonable factfinder could easily find that Plaintiff was significantly better qualified is, on its own, sufficient to withstand summary judgment. But, the Plaintiff's qualifications combined with the highly subjective explanation put forth by the Defendant, in its defense, provides more than sufficient evidence to raise a genuine dispute that Defendant's reasons are pretext for unlawful retaliation. *See Gipson,* 460 F. Supp.2d at 25. Further, Schwimer is totally lacking credibility, which further supports a finding of pretext here. *See Hicks*, 509 U.S. 502. Therefore, the Defendant's motion should be denied.

> 2.   Schwimer's Use of the Complaints Against Plaintiff is Evidence of her Retaliatory Motive

Once again the Defendant fails to provide anything more than highly subjective and suspicious reasoning for its non-selection of Plaintiff. Such vague and ambiguous defenses are pretext for Schwimer's retaliatory motives.

Defendant claims that Schwimer's decision not to select Plaintiff was influenced by work-related incidents involving Plaintiff, however, Defendant only provides one insignificant

13

concrete example of any incidents of which Schwimer was aware. Defendant mainly relies upon
the denial of a leave request for Michael Williams as evidence of Plaintiff's lack of supervisory
skills. *See* Defendant's Br. at 9. However, the Defendant's version of the incident is lacking and
misleads one to believe Plaintiff acted in an unreasonable manner.

Michael Williams requested one-day of leave to spend vacation time, prior to a work-
related activity, in Florida. Ex. 4 at 33. Initially, Cynthia Gaines, Williams' first-line supervisor
denied the request due to staffing issues and concerns about projects and deadlines. Ex. 4 at 33-
34. Plaintiff, as his second-line supervisor, approved Gaines' denial in an attempt to support
Gaines' departmental needs. Ex. 4 at 34-35; Ex. 16 at 23-24; Ex. 20 at 12 (Deposition of
Michael Williams) (Williams reporting Plaintiff's concern about staffing issues). As another
option, Plaintiff told Williams he could trade with another employee and have the day off, just so
long as the work was covered that day. Ex. 16 at 24; Ex. 20 at 12. Plaintiff even sought the
advice of James McKay and Maureen Smythe, who supported her decision. Ex. 4 at 35-36. He
then brought the issue to the attention of Schwimer, who, for unknown reasons, found the denial
to be unreasonable. Ex. 16 at 114 (Schwimer stating the denial was "not reasonable to me" but
providing no other reasons). That Plaintiff made a decision in support of a supervisee's decision
regarding staffing that for unknown reasons Schwimer found to be unreasonable can hardly
support Schwimer's contention that Plaintiff had "work-related incidents" that made her a less
qualified candidate. Such highly subjective reasoning is inherently suspicious and masks
Schwimer's true motives, which were retaliatory in nature. *See Gipson*, 460 F. Supp.2d 15.

Further, Defendant relies on an alleged personality conflict Williams had with Plaintiff.
*See* Defendant's Br. at 10. Williams, a disgruntled employee whose leave had just been denied,

complained to Schwimer, and according to his own testimony relayed a detailed account of his alleged problems with Plaintiff.  However, Defendant does not provide any evidence that Schwimer was aware of these issues, nor does Schwimer seem to recall anything more than an "impression that he was speaking in general terms about other issues." Ex. 16 at 101.  Even so, Schwimer did not see whatever issues there were as significant enough to investigate or even speak with Plaintiff about.  Ex. 7 at 28.  To now rely on the rantings of a disgruntled employee regarding incidents so insignificant that Schwimer did not take any action, is also highly suspicious and raises the inference that Schwimer is now attempting to mask her true retaliatory motive for the Plaintiff's non-selection.

Defendant returns to Schwimer's highly subjective and vague explanation citing lacking supervisory style and accountability, but fails to provide any concrete examples of such.  The one example Defendant puts forth is from another supervisor, James McKay, and not the selecting official.  Further, there is no evidence that the selecting official, Schwimer, was ever aware of this incident or relied on it in any way in her decision.  As such, Schwimer's statements and explanation are unsupported by anything other than her subjective opinion.  Again, this highly subjective reasoning that is unsupported by concrete evidence can only lead to the conclusion that Defendant's explanation is pretext for retaliation.

Defendant also refers to an "earlier incident" in support of Schwimer's reasoning that the complaints against Plaintiff made her a less qualified candidate for the Director position.  Defendant's Br. at 10.  This complaint was unfounded even to Plaintiff's supervisor at the time, Larry Hailes.  *See* Ex. 21 at 17-18 (Deposition of Larry Hailes).  The director of DOJ's Community Oriented Policing Services, Ralph Justus, complained that Plaintiff was not

15

completing work in a timely manner and was not responsive. *Id.* Hailes did respond, as the Defendant states, by saying he would work more closely with Plaintiff to improve her performance. *Id.* However, Hailes evaluation of Plaintiff's performance at that time was that is was, in fact, satisfactory. *Id.* Hailes and Schwimer responded in such a manner to please Justus, not because they felt Plaintiff's job performance was lacking, as the Defendant would lead one to believe. *See id.* Defendant's reliance on this complaint is misleading and pretext for retaliation.

The Defendant relies on these misleading and vague complaints in comparing Plaintiff to the selectee as they "informed Ms. Schwimer's determination that Ms. Suttington was the better candidate," despite the lack of concrete examples or objective standards. Defendant's Br. at 11. Using such flimsy arguments to substantiate highly subjective reasoning creates a genuine dispute as to whether the explanation is pretext for retaliation. *See Gipson*, 460 F. Supp.2d 15. As such, the Defendant's motion must be denied.

Lastly, the fact that others believed Suttington to be the better candidate, as Defendant argues, is irrelevant. It is only the decision-maker's perception of the Plaintiff that is relevant. *See DeJarnette v. Corning, Inc.*, 133 F.3d 293 (4th Cir. 1998). McKay or Hailes' view that Suttington was a good choice is, therefore, irrelevant to whether or not Schwimer's non-selection of Plaintiff was retaliatory. Further, these are again highly subjective opinions unsubstantiated by any concrete examples that create a genuine dispute as to whether a reasonable employer could have chosen the selectee given Plaintiff's superior qualifications

        3.    <u>Plaintiff's Non-Selection from Two Year Prior is Irrelevant to the Non-Selection at Issue</u>

It is undisputed that Plaintiff had previously applied for the director position and the

position was filled by a lateral transfer rather than from the applicant pool. However, this fact

has no relevance to the Plaintiff's non-selection a full two years later. The hiring process was

different, there was an interview panel with multiple recommending officials, and the applicants

were not the same. That Plaintiff was not selected once is in no way relevant to her second

application for the position and the process by which the position was filled in 2002. While in

2000 the review panel had not found Plaintiff to be the best candidate, that review panel had no

bearing on the Plaintiff's non-selection in 2002.

> 4.    The Improper Preference Given to Selectee in Hiring Evidences Pretext on the Part of the Selecting Official

Schwimer had a conversation with Suttington regarding her application for the position in

June 2002. Ex. 5 at 24-26; Ex. 16 at 147-48. Defendant argues it was not an "interview," but

while it may not have been an official "interview," according to Schwimer, Suttington clearly

believed it to be so and her explanation of the conversation would fit any reasonable person's

definition of an interview. Suttington recalled being called into Schwimer's office with

Schwimer asking her about her qualifications. Ex. 5 at 25-26. Whether Schwimer calls this an

"interview" is irrelevant, rather the fact that she gave improper preference in pre-selecting one

applicant is evidence of pretext. *See Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir.

1986)(holding that "[e]vidence of preselection operates to discredit the employer's proffered

explanation for its employment decision."). Suttington never intended to give full consideration

to Plaintiff's application, but rather pre-selected Suttington for the position.

Additionally, the SF-52 is further evidence that Suttington was pre-selected for the

position. The SF-52 that was submitted regarding this Director position, was initially filled out

and received by the Office of Personnel on June 4, 2002.  Ex. 6.  Schwimer authorized the action on June 9, 2002.  Ex. 6.  From the form, it appears that Schwimer had authorized the selection of Suttington prior to the close of the vacancy announcement.  This evidence of pre-selection works to discredit Schwimer's explanation for her decision and shows that her proffered reasons for selecting Suttington mask her true retaliatory motives.  *See Goostree*, 496 F.2d at 861.

> 5.   Schwimer has Placed her Credibility and Character in Question which is a Matter for the Trier of Fact to Decide

In her deposition, Schwimer repeatedly claimed that she is not the kind of person who retaliates and by doing so has placed her character and credibility at issue in this matter.  *See* Ex. 7 at 36-38, 53-54 (claiming she would not "retaliate against people for exercising their rights. [She's] just not going to do that. [She hasn't] done that. [She] won't do that. It's not who [she is] personally or professionally.").  Her insistence that she is not the type of person who would retaliate creates a genuine dispute regarding her character and credibility.  This dispute can only be determined by the trier of fact upon the deponent providing live testimony at trial.  As such, the Defendant's motion for summary judgment should be denied.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment must be denied. There are far too many material issues over which there is a genuine dispute and extensive evidence from which a jury could find that the Defendant's stated reasons for Plaintiff's non-selection are pretext to hide retaliation.

Respectfully submitted,


_____/s/_____
Michael J. Kator
(Bar No. 366936)
Cathy A. Harris
(Bar No. 467206)
KATOR, PARKS & WEISER, PLLC
1200 18th Street, N.W.
Suite 1000
Washington, D.C. 20036
(202) 898-4800

January 12, 2009                          Attorneys for Plaintiff