# EXHIBIT 1

IN THE MATTER OF:

**ADA GONZALES**
      Complainant                                          COMPLAINT NO.
                                                           JP 0203
v.

**U.S. DEPARTMENT OF JUSTICE,**
**OFFICE OF JUSTICE PROGRAMS**
      Respondent

---

### Responses of Travis McCrory to Investigator's Request for Information from Management Officials

1. **Please state your full name, sex, age, date of birth and national origin.**

Name: Travis Michael McCrory
Sex: Male
Age: 35
DOB: January 30, 1967
National Origin: American

2. **Please state your position, series, and grade during the time of the incidents. Please state your current position, series, and grade, if different**

Previous Position: Director, Office of the Comptroller, Training and Policy Division (November 2000-June 2002)
Series and Grade: Supervisory Staff Accountant, GS-510-15

Previous Position: Acting Director, Office of the Comptroller, Accounting Division (June 2002)
Series and Grade: Supervisory Staff Accountant, GS-510-15

Current Position: Deputy Director, Office of Business and Information Management
Series and Grade: Supervisory Management Analyst, GS-343-15


EXHIBIT D-2
PAGE 1 OF 84

None of the GS-14 supervisors in the Training and Policy Division, other than the Division Director, had an enclosed office. The other three supervisors, Darlene Mongelli (a white female over 40), Cynthia Gaines (a black female over 40), and Ms. Gonzales (a Hispanic female over 40), all were assigned open workstations. I explored with the Comptroller the option of enclosing these workstations to create offices, but funding was not available to accomplish this. As a result, all three supervisors remained in open workstations.

Ms. Gonzales spoke to me a few times about wanting an office. I wanted her, as well as my other supervisors, to have an office, but there were none available in the area occupied by the Training and Policy Division and no funds were available to remodel to create more office space. During one conversation she identified other offices in the Office of the Comptroller, but these were in space assigned to other Divisions of the Office of the Comptroller.

8. **Please explain in detail what you know about the Complainant's allegation that management provided her with an untimely yearly evaluation on March 20, 2002, which did not reflect the quality of her work. Indicate what your involvement was in this matter.**

In November 2001, I provided Ms. Gonzales with a rating for the period ending June 24, 2001. The rating was not prepared and provided to Ms. Gonzales earlier due to an oversight on my part. I prepared the rating and the Deputy Comptroller approved it as the reviewing official, prior to providing it to Ms. Gonzales in November 2001. OJP regulations require both the rating official and reviewing official to sign the rating before the rating official provides the rating to the employee.

The rating I provided Ms. Gonzales reflected that she had met the objectives of each element in the Performance Achievement Kit (PAK). When Ms. Gonzales and I met to discuss the rating, she asked that the commentary of the rating be expanded to include some of the assignments that she had worked on while she was the Acting Director of the Training and Policy Division from August - November 2000.

In a pass/fail rating system, the employee either has or has not met the requirements of the work objective. Because a pass/fail rating system does not require the supervisor to set forth in commentary the justification for different rating levels, as is required in a multiple-tier rating system (where a rating is either unsuccessful, successful, excellent, or outstanding), my practice is to prepare limited commentary in the rating for employees who have met the objectives of the rating elements. Instead, I recognize the quality of an employee's work in the justification for monetary awards, which I did twice for Ms. Gonzales during the time she worked for me. In August of 2001, I recommended and Ms. Gonzales received a $1,000 cash award for her successful management of the project to translate the OC Financial Guide into Spanish. In June 2002, I recommended and Ms. Gonzales received a $2,000 cash award for her successful management of the project to re-format the English version of the Financial Guide. During this same time period, I recommended and Ms. Mongelli (white female over-40) received two cash



awards totaling $3,500 and I recommended and Ms. Gaines (black female over-40) received one cash award of $2,000. I did not recommend any other employees of the Training and Policy Division for cash awards during this time period.

Notwithstanding my stated practice, I asked Ms. Gonzales in November 2001 when I discussed her rating with her to provide for my consideration any commentary that she would like me to add to her appraisal. Ms. Gonzales retained the original of the rating that I provided her, but did not provide any suggested commentary for my consideration, nor did I follow up on it.

On Tuesday, March 12, 2002, I received an e-mail from Maureen Smythe, Assistant to the Comptroller, requesting the status of Ms. Gonzales's performance rating for the period ending 6/24/01 and a new PAK (Copy of attached e-mail dated 3/12/02). As the Administrative Assistant to the Comptroller, Ms. Smythe periodically reviewed the status of performance evaluations and followed up with supervisors on ratings not yet completed.

Ms. Gonzales stopped by my office at approximately 3:00 pm that same day with a question about a work assignment and I told her that Ms. Smythe had asked for the status of her rating. I reminded Ms. Gonzales that I had provided her with a written final rating and a new PAK in November 2001, that she had asked that I add commentary to the rating, and that I had asked her to provide suggested additional commentary. Ms. Gonzales said she thought I was going to add commentary and return the rating to her. I replied that I was expecting suggestions from her for me to consider, to which she replied "so I have to do my own rating?" I replied that I had already prepared and provided her rating; but since she had requested additional commentary, I was awaiting her to provide it for my consideration. She also stated that she wasn't pleased that the reviewing official, Jim McKay, had signed the rating before I presented it to her. I told her that this was standard procedure. She disagreed, stating that she understood that the reviewing official was to review the rating, but sign it only after the employee reviewed and signed the rating. Ms. Gonzales left the office without indicating that she would provide proposed additional commentary.

At the conclusion of a meeting on another subject on March 21, 2002, I provided Ms. Gonzales with a copy of a revised performance rating for the period ending June 24, 2001, and a new PAK for the next rating period. I explained that since Ms. Gonzales believed that I was going to add commentary to the rating, that I reconsidered my evaluation and added additional commentary. I asked that Ms. Gonzales review the revised appraisal and schedule a meeting with me by close of business March 26, 2002 to discuss any questions she might have.

On Friday, April 5, 2002, I informed Ms. Gonzales that I wanted to finalize her appraisal prior to her going out on sick leave for back surgery on April 8, 2002, as we had not been able to meet on March 26, 2002. Ms. Gonzales said she was not sure she could sign the rating because she had "given it to someone else to look at." She also questioned whether I could legally rate her for the period prior to my arrival as Division Director in November 2000. I told her that if she did not

6



EXHIBIT D-2
PAGE 6 OF 24