IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ADA L. GONZALES, ) ) Plaintiff, ) ) v. ) ) ERIC H. HOLDER, Attorney General, ) United States Department of Justice[1] ) ) Defendant. ) ) | Civil Action No. 07-0676 (PLF) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, Eric H. Holder, Attorney General, United States Department of Justice, submits its reply to "Plaintiff's Opposition to Defendant's Motion for Summary Judgment" ("Plaintiff's Opp."). As set forth below, the Defendant is entitled to summary judgment because, given the applicable legal and evidentiary standards, there exists no genuine issue of material fact.

I. **ARGUMENT**

 A. **The Plaintiff's Retaliation Claim Must Fail**

 1. **The Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation**

The Defendant's Motion for Summary Judgment demonstrated (at pp. 5-7) the Plaintiff's failure to establish a causal connection between her protected activity and her non-selection for the Training and Policy Division ("TPD") Director position in the Office of Justice Programs' ("OJP") Office of the Comptroller. Specifically, the Defendant demonstrated that the passage of time

---

 [1]Pursuant to Federal Rule of Civil Procedure 25(d), Eric H. Holder, Attorney General, United States Department of Justice, is substituted as the Defendant in this case.

between the selecting official's learning of the protected activity and the non-selection, and that certain actions taken by the selecting official, former Comptroller Cynthia Schwimer ("Ms. Schwimer"), for the benefit of the Plaintiff over this same period of time, refuted any suggestion that the two events were causally connected.

In the Plaintiff's Opposition, she argues that the three months between Ms. Schwimer's learning of the Plaintiff's protected activity and her non-selection of the Plaintiff is a close-enough temporal proximity to infer a causal connection; and, in any event, the Plaintiff argues, Ms. Schwimer retaliated at her first opportunity, making the length of time between the two events less significant.  In addition, the Plaintiff's Opposition attempts to minimize Ms. Schwimer's actions on behalf of the Plaintiff.  There is no support, however, for the Plaintiff's arguments.

The three months between Ms. Schwimer's knowledge of the Plaintiff's protected activity and her non-selection of Plaintiff does not permit an inference of a causal connection between the two events.  *E.g., Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (citing favorably *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997), which rejected an inference of causation when the two events were three months apart); *Edwards v. Environmental Prot. Agency*, 456 F. Supp. 2d 72, 92-93 (D.D.C. 2006) (two months was not close enough to establish *prima facie* causal connection); *Jones v. Greenspan*, 402 F. Supp. 2d 294, 303 (D.D.C. 2005) (three-to-four months was not close enough to establish *prima facie* causal connection); *Sullivan-Obst v. Powell*, 300 F. Supp. 2d 85, 94 (D.D.C. 2004) (three months and one week was not close enough to establish *prima facie* causal connection); *Baker v. Potter*, 294 F. Supp. 2d 33, 41 (D.D.C. 2003) (two months was not close enough to establish *prima facie* causal connection).  *Cf. Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (three months is not "very close"

temporal proximity and does not satisfy *prima facie* causal connection); *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 233 (3rd Cir. 2007) (three months was not close enough to establish *prima facie* causal connection); *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (three months was not close enough to establish *prima facie* causal connection).

The Plaintiff attempts to support her argument that the three-month gap is not too long, by arguing that, because of the Plaintiff's absence from the office until late-June, Ms. Schwimer's non-selection of the Plaintiff on July 16, 2002, was the first opportunity that she had to retaliate against her. The facts here do not support this argument. Ms. Schwimer, on June 26, 2002, approved a $2,000.00 award for the Plaintiff. *See* Defendant's Motion for Summary Judgment ("Defendant's Mot."), Exhibit 2, pp. 20-21. The Plaintiff's Opposition states that "this award was given to a group of three employees for" their work on the same project, Plaintiff's Opp. at 7, but the citation for this proposition does not support it. *See* Plaintiff's Opp., Exhibit 3, p. 58 (Plaintiff's testimony refers only to her "award," not the "awards," as being based on the reformatting project); *cf.,* Plaintiff's Opp., Exhibit 1, p. 5 (Mr. McCrory never suggests that the other two supervisors' awards were based on their work on the same project). The Plaintiff's Opposition further suggests that Ms. Schwimer had no choice but to approve the Plaintiff's award. The Plaintiff's Opposition neither explains nor provides any basis for its assertion that Ms. Schwimer had no discretion in the approval of an award for the Plaintiff. That Mr. McCrory recommended the Plaintiff for an award, and that Ms. Schwimer approved the awards of two other employees as well as the Plaintiff's, does not change the fact that Ms. Schwimer, as head of the Plaintiff's office, provided her approval for the Plaintiff's $2,000.00 award on June 26, 2002, much closer in time to the Plaintiff's protected activity than the non-selection.

The Plaintiff's Opposition also attempts to discount Ms. Schwimer's efforts to make the Plaintiff aware of the TPD Director vacancy: "Schwimer's assistant, Smythe left a message with Plaintiff's daughter . . . and e-mailed Plaintiff's work account. . . . Plaintiff did not receive the message, nor did she check her e-mail while on leave." Plaintiff's Opp. at 8. The Plaintiff's own testimony during her deposition, however, is at odds with this statement, because she acknowledges that she received Ms. Smythe's message: "I, subsequent to learning that the position was being announced, I learned that Ms. Smyt[h]e had left a voicemail, a message of some sort *which I didn't get until I believe I first heard it from [another employee.]*" Plaintiff's Opp., Exhibit 4, p. 41 (emphasis added). Regardless of whether or not the Plaintiff received the two messages from Ms. Smythe before she learned of the vacancy from another employee, the efforts employed by Ms. Smythe were reasonably calculated to inform the Plaintiff of the vacancy (including leaving a message with the Plaintiff's daughter, with whom the Plaintiff was staying) and were taken at Ms. Schwimer's direction. Defendant's Mot., Exhibit 4, p. 93 (Ms. Schwimer: "I directed my special assistant, Maureen Smythe, to get in contact with [the Plaintiff] so that she would be aware that the vacancy announcement was being posted, to give her an opportunity to apply.").

In her Statement of Material Facts in Dispute, the Plaintiff makes an additional argument with regard to her notice of the vacancy. She places blame on Ms. Schwimer for "not verify[ing] that Plaintiff received the message." Plaintiff's Statement of Material Facts in Dispute, ¶ 9. The Plaintiff asserts that "Schwimer was copied on the email that Smythe sent to Plaintiff and knowing full well that Plaintiff would not be checking her work email while out of the office took no further steps to inform Plaintiff of the vacancy announcement." *Id*. To begin with, the Plaintiff offers no record support for these assertions. The e-mail message that Ms. Schwimer received from Ms.

4

Smythe indicated that Ms. Smythe left a voicemail message with the Plaintiff's daughter, with whom the Plaintiff was staying.  Plaintiff's Opp., Exhibit 2 and Exhibit 4, p. 41.  Moreover, the Plaintiff has acknowledged that she was nearby and knew of her daughter's receiving the call, so her assertions in paragraph 10 of Plaintiff's Statement of Material Facts in Dispute that "there is no record of [Ms. Smythe's leaving a message] and Plaintiff has no knowledge of the call" are incorrect.  Defendant's Mot., Exhibit 4, p. 65 ("I had just gone down the hall because I was supposed to exercise and I -- just walking up in the condominium building on [my daughter's] floor, when the call [from Ms. Smythe] came.  And I think [my daughter] answered the phone, because she thought it was the pharmacy or something.").  Under the circumstances, where the Plaintiff knew of Ms. Smythe's telephone call – even recalling where she was at the moment her daughter took the telephone call – the Plaintiff's claim that Ms. Schwimer should have verified that the Plaintiff received the message is untenable.  But even if the Plaintiff did not receive the telephone message, it is undisputed that Ms. Schwimer directed Ms. Smythe's actions, which were reasonably calculated to provide the Plaintiff notice of the vacancy announcement.  It is also undisputed that the plaintiff submitted a timely application for the position.  Plaintiff's Statement of Material Facts in Dispute. ¶ 11.

     The temporal proximity between Ms. Schwimer's knowledge of the Plaintiff's protected activity on April 16, 2002, and her non-selection of the Plaintiff for promotion on July 16, 2002, does not support an inference of a causal connection between the two events.  Because of the Plaintiff's extended absence from the office during April, May, and June 2002, she had very little interaction with Ms. Schwimer between the time that she first engaged in protected activity and the time when she was not selected for promotion; the only reported actions of Ms. Schwimer during

this time frame (*i.e.,* that Ms. Schwimer personally directed Ms. Smythe to contact the Plaintiff about the vacancy, and that Ms. Schwimer approved the Plaintiff's monetary award), however, are not disputed and clearly demonstrate that Ms. Schwimer harbored no retaliatory animus toward the Plaintiff. Accordingly, the Plaintiff cannot establish the causal connection needed for a *prima facie* case of retaliation.

## 2. The Plaintiff Fails to Establish that the Defendant's Legitimate Reasons for Not Selecting the Plaintiff Were Pretextual

Assuming *arguendo,* that the Plaintiff successfully were able to establish a *prima facie* case of retaliation, her case nevertheless would fail because she does not rebut the Defendant's articulated legitimate, non-retaliatory reasons for the Plaintiff's non-selection.[2] Ms. Schwimer selected Joanne Suttington for the TPD Director position because she was better suited to fulfill the supervisory and managerial needs of the position.

### Plaintiff Was Not A Far Superior Candidate

The Defendant's Motion for Summary Judgment (at pp. 7-12) established that Joanne Suttington was the superior candidate for the TPD Director position, and for that reason was selected. The Plaintiff's Opposition argues that the Plaintiff was the superior candidate because of her accomplishments, and her prior experience in TPD, including a brief stint as Acting Director of TPD. In addition, the Plaintiff's Opposition relies upon the assessment of the Plaintiff's abilities provided by two agency employees, and her claim that Ms. Schwimer is a liar.

---

[2] The Plaintiff's Opposition asserts that "Defendant has not carried its burden of production to provide evidence to support a legitimate, nondiscriminatory explanation for its decision to deny Plaintiff's request for promotion." Plaintiff's Opp. at 8. There is no support, factually or legally, for the Plaintiff's assertion. The Defendant's burden, which it has met, is one of production, not persuasion, requiring the Defendant only to articulate a non-retaliatory reason for its actions. *Cf.*, *Barnette v. Chertoff*, 453 F.3d 513, 516 (D.C. Cir. 2006).

Employers have broad discretion to choose the employees best qualified to fill their needs: "Short of finding that the employer's stated reason was indeed a pretext [for retaliation] - and here one must beware of using 20/20 hindsight - the court must respect the employer's unfettered discretion to choose among qualified candidates." *Fischbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C. Cir. 1996). Certainly, "basing a promotion decision on an assessment of qualifications will almost always qualify as a legitimate, nondiscriminatory reason." *Scales v. Slater,* 181 F.3d 703, 712 (5th Cir. 1999). Only where a reasonable employer would have found the plaintiff "significantly better qualified" may a fact finder infer that the employer consciously selected the less qualified applicant. *Carter v. George Washington Univ.*, 387 F.3d 872, 881 (D.C. Cir. 2004) (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998)).

The Plaintiff is unable to show that her credentials are superior (let alone far superior) to Ms. Suttington's. They had comparable years of service in OJP's Office of the Comptroller (the Plaintiff seven years, Plaintiff's Opp. at 10, and Ms. Suttington six years, Defendant's Mot., Exhibit 11, p. 1), but Ms. Suttington had over a decade of accounting experience before coming to OJP, compared to no such experience whatsoever for the Plaintiff. *Compare* Defendant's Mot., Exhibit 11, pp. 5-7 (accounting experience at the Resolution Trust Corporation, Ralph C. Johnson & Co., CPAs, System Telephone Services, C.L. Farley Construction Co.) *with* Plaintiff's Opp., Exhibit 15, pp. 6-7 (reporting prior employment as education consultant and insurance broker). The Plaintiff had a Master's degree in Business Administration, Plaintiff's Opp. at 10, and Ms. Suttington had a Master's degree in Accountancy and was a Certified Public Accountant. Defendant's Mot., Exhibit 11, p. 11.

Ms. Suttington and the Plaintiff had comparable supervisory experience at OJP – over 4

7

years – and each had been called upon to serve as Director, on an acting basis, of her Division. *Compare* Defendant's Mot., Exhibit 11, p. 4 (Supervisory Staff Accountant beginning in January 1998; periodically served as Acting Director) *with* Plaintiff's Opp., Exhibit 15, p. 6 (Supervisory Staff Accountant beginning in October 1997) and p. 1 (Acting Director). Each had availed herself of various training opportunities, and had her accomplishments recognized with awards. *Compare* Defendant's Mot., Exhibit 11, pp. (Providing Superior Customer Service, Performance Management, Supervisory Training, OMB A-133 Revised, Employee of the Month, numerous performance-related cash awards) *with* Plaintiff's Opp., Exhibit 15, pp. 3-4 (OPM's Executive Development Program, Effectively Leading Change Training, Contracting Basics for COTRS, DOJ Budget Process, Indirect Cost Training, numerous performance-related cash awards).

The Plaintiff and Ms. Suttington both had experience in the Office of the Comptroller, performing training, providing technical assistance, and developing accounting policies. See Defendant's Mot., Exhibit 11, pp. 4-5, 10, 12, and 17. The Plaintiff touts her experience in these areas while in TPD, dismissing Ms. Suttington's similar experience because it occurred outside TPD. Plaintiff's Opp. at 10. Regardless of where it occurred, however, Ms. Suttington's experience in each of these areas was significant, relevant, noteworthy, and creditable: She "[c]oordinate[d] with OJP Bureaus/Offices, the Department of Justice, and other Federal agencies in the development of financial and grant management policies and procedures[,]" "[p]rovide[d] technical assistance and expert advice to grantees and program offices[,]" "[t]rained and guided new staff in developing their skills to analyze budgets and negotiate indirect cost agreements[,]" "[d]eveloped and presented training curriculum for new staff accountants[,]" "[r]evised the OC Financial Guide for the grantees[,]" "[d]eveloped audit programs for on-site and desk reviews[,]" "[p]articipated in seminars

for grantees and program offices[,]" and "[p]repared a financial fact sheet for distribution to grantees." Defendant's Mot., Exhibit 11, pp. 4-5. In addition, Ms. Suttington had been selected to serve "on a task force with other Federal agencies in collaborating with [] state and local governments and other Federal grant recipients to develop policies and procedures that will provide uniformity among the Federal agencies[, including] the revision of the cost principles, OMB Circulars A-122, A-87 and A-21." Id. at 10. *Cf.* id. at 17. Clearly, Ms. Suttington had significant and substantive experience, even if not in TPD, with providing technical assistance and training to OJP employees and DOJ grantees, and had substantial involvement in developing policies within OJP and across the state and Federal governments. See Defendant's Mot., Exhibit 11, pp. 4-5, 10, 12, and 17.

Although the Plaintiff's Opposition touts the Plaintiff's substantive experience in TPD, Ms. Schwimer has testified that the decisive consideration in her selection decision was the relative managerial and supervisory skills of the candidates. *E.g.*, Defendant's Mot., Exhibit 6, p. 22. In this regard, the Plaintiff's Opposition offers no basis to challenge Ms. Schwimer's assessment of Ms. Suttington as the better manager and supervisor. The Plaintiff's Opposition resorts to the testimony of Patricia Cuffee, who was two levels below the Plaintiff in TPD, and interacted with her only "[a]s often as necessary." Plaintiff's Opp., Exhibit 16, p. 75. Although Ms. Cuffee vaguely described her impressions of some involvement she had with the Plaintiff, she offered no opinion on Ms. Suttington's managerial and supervisory skills. Accordingly, Ms. Cuffee's impressions of the Plaintiff's manner of supervising – offering faint praise at best – does nothing to challenge Ms. Schwimer's assessment of the relative skills of the two. In addition, the Plaintiff's Opposition relies upon the very brief testimony of Andrea McIntosh, an employee whom she first supervised *after* she

9

transferred out of TPD over fifteen months after the non-selection at issue here. EEO Hearing Transcript (REPLY EXHIBIT 1, pp. 67-68). To the extent that Ms. McIntosh's opinion of the Plaintiff from over a year later and in a different job is relevant at all, it is entirely unhelpful because, like Ms. Cuffee, she offered no insight into the Plaintiff's abilities relative to Ms. Suttington. *See Horvath v. Thompson*, 329 F. Supp. 2d 1, 8 (D.D.C. 2004) (Plaintiff's emphasizing his own qualifications "is irrelevant since it does nothing to prove superiority of [his] qualifications as compared to those of [the selectee]").

In addition, the considerations that would inform an employee's assessment of her supervisors (*e.g.*, how does the supervisor respond to my needs as an employee), are different from those that would inform management's assessment of a supervisor (*e.g.*, how does the supervisor respond to the needs of the agency). More telling, therefore, than the assessments offered by two of the Plaintiff's former subordinates (who offered no comparison of the Plaintiff to Ms. Suttington, to boot), are the assessments offered by two of the Plaintiff's former managers – Larry Hailes and Jim McKay, both of whom also supervised Ms. Suttington in OJP's Office of the Comptroller. In comparing the Plaintiff with Ms. Suttington, both Mr. Hailes and Mr. McKay testified in agreement with Ms. Schwimer's assessment that Ms. Suttington was the superior candidate for the TPD Director position. Defendant's Mot., Exhibit 13, pp. 23-24 and Exhibit 14, pp. 21-24 (Ms. Suttington "was a very good supervisor," whereas the Plaintiff did not "take[] responsibility for the work product" of her staff and did not "review[] it before it was given to me.").

The Plaintiff's claim to be the far superior candidate is simply her self-assessment and focuses upon her having greater experience in TPD. Her self-assessment, however, is irrelevant. *See Hastie v. Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000), *aff'd sub nom.*, *Hastie v. Potter*,

10

2001 WL 793715, at *1 (D.C. Cir. June 28, 2001) (finding no genuine issue of material fact where the sole evidence plaintiff provided was "her own self-serving and conclusory statement" that she was more qualified); *Waterhouse v. Dist. of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), *aff'd*, 298 F. 3d 989, 997 (D.C. Cir. 2002) (A "[p]laintiff cannot establish pretext simply based on her own subjective assessment of her own performance, for 'plaintiff's perception of h[er]self, and of h[er] work performance, is not relevant. It is the perception of the decision maker which is relevant.'") (citation omitted) (brackets in original).  And, even if the Plaintiff's self-assessment somehow were relevant, it is at odds with every manager for whom she worked in OJP's Office of the Comptroller. *See, e.g.,* Defendant's Mot., Exhibit 4, p. 53 (disagreeing with Mr. McCreary's assessment), Exhibit 13, pp. 23-24 (assessment of Mr. Hails) and Exhibit 14, pp. 21-24 (assessment of Mr. Mackay), Exhibit 18, p. 25.

      The Plaintiff's focus on her experience in TPD, all the while ignoring Ms. Suttington's similar substantive experience (albeit outside of TPD), however, is beside the point. Ms. Schwimer has testified that her selection of Ms. Suttington turned on the relative managerial and supervisory skills of the candidates, not on their TPD experience. *E.g.,* Defendant's Mot., Exhibit 6, pp. 22, 24, and 47.  Prior decisions with regard to this same TPD Director position demonstrate that Ms. Schwimer did not judge prior TPD experience as an essential factor for the position: In November 2000, Ms. Schwimer canceled the selection process for the TPD Director position and laterally transferred Travis McCrory into the position even though he had never worked in TPD, Plaintiff's Opp., Exhibit 1, p. 1, Deposition of Cynthia Schwimer on July 17, 2008 ("7/17/08 Schwimer Dep.") (REPLY EXHIBIT 2, pp. 40-41); And on another occasion, Ms. Schwimer made Elliot Brown the Acting Director of TPD, even though he was not an accountant.  7/17/08 Schwimer Dep. (REPLY

EXHIBIT 2, pp. 32, 38-39).

Ms. Suttington had broader and more extensive accounting experience than the Plaintiff. *Compare* Defendant's Mot., Exhibit 11, pp. 4-7 *with* Plaintiff's Opp., Exhibit 15, pp. 4-7.  In other areas (*e.g.,* their length of time as supervisors, their advance degrees, their training, and their accomplishments and awards) they were comparable.  Given that this was a GS-15 position responsible for supervision of a Division within the Office of the Comptroller, Ms. Schwimer's decision, very reasonably and appropriately, turned on the managerial and supervisory skills of the candidates.  *Cf.  Stewart v. Ashcroft*, 352 F.3d  422, 428-30 (D.C. Cir. 2003) ("[W]e defer to the Government's decision of what nondiscriminatory qualities it will seek in filling the Chief position."); *Horvath*, 329 F. Supp. 2d at 8 ("[I]t was within the selecting official's prerogative to place greater value on [the selectee's] managerial experience . . . .").  *See also Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) ("An employer has even greater flexibility in choosing a management-level employee . . . because of the nature of such a position.").  The Plaintiff's Opposition amounts to nothing more than dissatisfaction with Ms. Schwimer's selection and fails to carry the Plaintiff's burden of demonstrating that she was significantly better qualified than Ms. Suttington.

## Ms. Schwimer's Articualted Reasons For Her Selection Are Credible

The Defendant's Motion for Summary Judgment (at pp. 13-14) explains  Ms. Schwimer's denial of a conversation with Ms. Suttington, which Ms. Suttington has described as an "interview." This alleged conversation was very brief and apparently occurred at the tail-end of a work-related meeting between Ms. Suttington and Ms. Schwimer.  Even if it were assumed that the conversation took place as Ms. Suttington testified, the Defendant's Motion demonstrated that Ms. Schwimer's denial of the conversation did not amount to pretext, because Ms. Schwimer had ample and

sufficient reasons for her non-selection of the Plaintiff, and because the two other candidates also not selected – neither of whom had any prior EEO activity – were treated the same as the Plaintiff.

The Plaintiff attempts to challenge Ms. Schwimer's credibility by stretching this one difference between the testimony of Ms. Schwimer and Ms. Suttington into three allegedly separate lies by Ms. Schwimer. Plaintiff's Opp. at 12-13.[3] But even if the Plaintiff were correct that Ms. Schwimer lied about the conversation, she offers nothing that would allow the Court to infer that retaliation for the Plaintiff's prior EEO activity was the real reason motivating Ms. Schwimer's selection of Ms. Suttington.

The Plaintiff's Opposition also attempts to challenge Ms. Schwimer's credibility by resorting to an ambiguous reference in the transcript of the investigator's interview of Ms. Schwimer. The transcript reports that Ms. Schwimer identified Ms. Suttington as having "an NBA." Plaintiff's Opp., Exhibit 12, p. 11. The Plaintiff, who was not present for the interview, assumes that Ms. Schwimer actually said "an MBA" instead of "an MA." Even if Ms. Schwimer mis-spoke during the interview, she did so only insofar as the type of Master's degree that Ms. Suttington had earned. Given that the vacancy announcement did not require any kind of Master's degree (in fact, it did not require a Master's degree at all), having a Master's of Business Administration and having a Master's of Accountancy are comparable degrees.[4] So, assuming that Ms. Schwimer did mis-speak

---

[3]The Plaintiff's Opposition also stretches to argue that a trial is necessary because Ms. Schwimer placed her credibility at issue by expressing umbrage in her deposition at the Plaintiff's suggestion that Ms. Schwimer is the kind of the person who would retaliate against someone. Plaintiff's Opp. at 18. Plaintiff's argument is beyond comprehension. The denial by an alleged discriminating official that the official is not a person who retaliates does not create a triable issue.

[4]In fact, the "Qualifications" for the position listed "Degree: Accounting, or a degree in a related field such as business administration, finance or public administration that included or was supplemented by 24 semester hours in accounting. . . ." Defendant's Mot., Exhibit 5, p. 1.

13

in the way the Plaintiff surmises, it is irrelevant and does not create a genuine dispute as to a material fact. *See Aka*, 156 F.3d at 1295 (describing an instance when a misstatement would amount to "adequate evidence" to permit an inference of discrimination with the following example: "[I]f the employer says that it did not hire the plaintiff because he did not speak Portuguese, the plaintiff can show that he *did* speak Portuguese, and that the employer knew it.").

### Ms. Schwimer Properly Considered Her Impressions Of, And Experience With, Ms. Suttington And The Plaintiff In Making Her Selection

In the Defendant's Motion for Summary Judgment (at pp. 9-12), we demonstrated that Ms. Schwimer had worked with Ms. Suttington and the Plaintiff for a number of years. Through her interactions with the two candidates and from information reported by others over those years, Ms. Schwimer was able to assess their relative abilities as managers and supervisors. The Motion for Summary Judgment documented, with corroboration from others, several problems that gave Ms. Schwimer pause over the Plaintiff's supervisory and managerial abilities. Defendant's Mot, pp. 9-12. Ms. Schwimer, it is undisputed, had had no such problems with Ms. Suttington.

In one particular instance, an employee Michael Williams complained to Ms. Schwimer about the Plaintiff's denial of a leave request and other issues he had had with the Plaintiff. The Plaintiff's Opposition goes to considerable lengths to argue, based on the Plaintiff's own version of the events, that Mr. Williams recalled the events incorrectly. Whether or not the Plaintiff's version of the events is accurate is a red herring. The only question is whether Ms. Schwimer "received [his] complaints and believed that [the Plaintiff's] performance was deficient." *Horvath*, 124 F. Supp. 2d at 10. *See also Smith v. Chamber of Commerce of U.S.*, 645 F. Supp. 604, 608 (D.D.C.

---

If anything, having a Master's degree in Business Administration may not have been so favorable as having a Master's degree in Accountancy.

1986) ("Plaintiff challenges the accuracy of the criticisms of his work performance. However, plaintiff's perception of himself, and of his work performance, is not relevant. It is the perception of the decisionmaker which is relevant."). The Plaintiff's Opposition offers nothing that calls into question that Mr. Williams complained to Ms. Schwimer about problems he was having with the Plaintiff, including her denial of his leave request, and, that based on Mr. Williams' complaint, Ms. Schwimer reversed a decision that she believed to have been made by the Plaintiff to deny him leave. And although the Plaintiff asserts that Mr. Williams' immediate supervisor denied his leave, and she merely supported that decision only after consulting with the Deputy Comptroller, she produces no evidence that these details (assuming them to be accurate) were known to Ms. Schwimer. Plaintiff's Opp. at 14.

The Plaintiff's Opposition also mischaracterizes the testimony provided by Mr. Hailes about the complaint that Ralph Justus raised concerning the Plaintiff's performance. The Plaintiff suggests that Mr. Hailes and Ms. Schwimer found no merit in Mr. Justus' complaint. Plaintiff's Opp. at 16. That Mr. Hailes found the Plaintiff's performance to be satisfactory, even in the face of Mr. Justus' complaint, however, does not mean that he did not find room for her to improve her performance. In fact, Mr. Hailes went on to testify that he met with the Plaintiff more frequently and sought more updates from her, which caused her performance to "improve some." Defendant's Mot., Exhibit 13, p. 18.

The Plaintiff's Opposition offers nothing to rebut the fact that Ms. Schwimer never heard any complaints about Ms. Suttington, not even minor ones. Defendant's Mot., Exhibit 6, p. 47. When making her decision, therefore, Ms. Schwimer had before her the Plaintiff, about whom she had received some complaints, and Ms. Suttington, whom she knew to have a sterling reputation. It is

15

Ms. Schwimer's perceptions of the Plaintiff that matters, and the Plaintiff's Opposition fails to raise any genuine dispute as to the complaints that Ms. Schwimer received or the honestly-held belief that she placed in them.

### The Plaintiff's Non-selection for the TPD Director Posistion Is Consistent With Her Non-Selection Under An Announcement Issued Prior To Any Of Her EEO Activity

The Defendant's Motion (at pp. 12-13) pointed out that the Plaintiff had applied for this TPD Director position in 2000, and had not been selected. In fact, the panel that made a recommendation to Ms. Schwimer under this earlier announcement agreed that the Plaintiff was the lowest ranked of the candidates. The Plaintiff's Opposition argues that this fact is not relevant to the selection at issue here. Plaintiff's Opp. at 16 - 17.[5] It is relevant, however, insofar as it demonstrates (again) that others in the Office of the Comptroller – individuals who were responsible for judging the suitability of the Plaintiff for the TPD Director position – determined her not to be the superior candidate that she alone believes herself to be. *See* Plaintiff's Opp. at 10 ("Plaintiff was the employee directly in line for the position and had several months experience as the Acting Director in 2000."). In addition, the judgment of these other individuals in the Office of the Comptroller regarding the suitability of the Plaintiff for the TPD Director position was made over a year before she engaged in any EEO activity.

### Ms. Schwimer Did Not Preselect Ms. Suttington

---

[5] Although arguing that the prior vacancy is not relevant, the Plaintiff's Statement of Undisputed Material Facts ¶ 19 seeks to include additional facts as to how that earlier selection process was different from the one at issue here. There were plenty of distinctions in the two selection processes to justify different treatment, but only one that bears mentioning: The earlier vacancy was all sources, resulting in applicants from outside OJP, whereas the vacancy at issue here was OJP-wide, resulting in applicants all well-known to Ms. Schwimer. Plaintiff's Opp., Exhibit 8, pp. 22-23.

For the first time, in the Plaintiff's Opposition, the Plaintiff asserts that Ms. Schwimer preselected Ms. Suttington. This assertion relies on the so-called interview to which Ms. Suttington testified (discussed above) and an unfounded assertion that Ms. Schwimer "authorized the selection of Suttington prior to the close of the vacancy announcement." Plaintiff's Opp. at 18. The Plaintiff's reliance on these two facts is misplaced.

To begin with, Ms. Schwimer testified that, going into the TPD Director hiring process, she would have liked to have seen Maureen Smythe, not Ms. Suttington, chosen. 7/17/08 Schwimer Dep. (REPLY EXHIBIT 2, p. 44). Ms. Smythe, however, was not the most qualified of the candidates. *Id.*

Assuming that an interview occurred as Ms. Suttington recalls, nothing about the substance of that interview indicates that Ms. Schwimer had decided upon Ms. Suttington at that time. Plaintiff's Opp., Exhibit 5, pp. 25-26 (Ms. Suttington saying that they discussed her qualifications and interest in the position). And even if Ms. Schwimer had indicated at that time whom she intended to select for the position, this so-called interview has been placed by Ms. Suttington as occurring after the vacancy announcement closed. It strains credulity to suggest that such a conversation during the period when the selecting official is making her selection amounts to *pre*selection.

The Request for Personnel Action form also offers no support for the Plaintiff's preselection argument. The practice in OJP in 2002 was for a blank Request for Personnel Action form to be submitted to the Office of Personnel by the official seeking to fill a vacancy. Affidavit of Lisa Shipe ("Shipe Affidavit") (REPLY EXHIBIT 3, p. 2). The submission of this blank form, signed by the official who ultimately would need to approve the personnel action, served as a certification to the

17

Office of Personnel that the official actually had a vacant position to fill. *Id*. In this case, Ms. Schwimer signed a blank Request for Personnel Action form on June 3, 2002, and submitted it to the Office of Personnel. *Id*.; Affidavit of Susie Somuah-Gyamfi (REPLY EXHIBIT 4, p. 1) (testifying that Ms. Schwimer's signature is dated June 3, 2002).[6] Ms. Suttington's name was not on the form when it was signed and submitted by Ms. Schwimer, but was written on the form by Lisa Shipe on August 5, 2002, after Ms. Shipe received notice of Ms. Schwimer's July 16, 2002, selection of Ms. Suttington. Shipe Affidavit (REPLY EXHIBIT 3, p. 2).

There is no factual basis, therefore, for the Plaintiff's claim that Ms. Schwimer preselected Ms. Suttington for the TPD Director position. But even if there were some basis, preselection without evidence of retaliatory motive does not violate Title VII. *See e.g., Washington v. Chao*, 577 F. Supp. 2d 27, 46 (D.D.C. 2008) ("Title VII does not prohibit hiring practices that are unrelated to the protected status (e.g., race) of an applicant."); *Howze v. Adams*, 689 F. Supp. 20, 25 (D.D.C. 1988). The Plaintiff has not provided any support for her assertion that Ms. Schwimer was motivated by retaliation and her claim of retaliation should be denied.

## II.  CONCLUSION

Through two separate discovery periods and over five years of litigation, the Plaintiff still is unable to produce a single piece of evidence that indicates that Ms. Schwimer was motivated by retaliation when she made her selection for the TPD Director position. Plaintiff has failed to meet her burden to prove that Ms. Schwimer's selection was based on retaliatory motive. *See Fischbach*, 86 F.3d at 1184. The Plaintiff has failed to meet her burden, and the Plaintiff's Opposition fails to identify any genuine dispute over any material fact that would enable a jury to rule in her favor.

---

[6]The Plaintiff's Statement of Material Facts in Dispute ¶ 15 incorrectly asserts that Ms. Schwimer's signature is dated June 9, 2002.

Accordingly, the Defendant's Motion for Summary Judgment should be granted.

Respectfully submitted,

\_\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


\_\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


\_\_\_\_/s/_____
 WYNEVA JOHNSON,  D.C. BAR #278515
Assistant United States Attorney
555 Fourth St., N.W., E4106
Washington, D.C. 20530
(202) 514-7224

Of Counsel:

RAFAEL A. MADAN
JASON P. COOLEY
MARIE E. BURKE
MELINDA HART
Office of Justice Programs
Office of the General Counsel

19

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served by Express Mail, postage prepaid

to:

Michael J. Kator
KATOR, PARKS & WEISER, P.L.L.C.
1200 18th Street, N.W.
Suite 1000
Washington, DC 20036
Fax: (202) 289-1389

on this 20th  day  of February, 2009.

    /s/
WYNEVA JOHNSON
Assistant United States Attorney
555 4th Street, N.W,
Room E4106
Washington, D.C.  20530
Phone: (202) 514-7224