UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ADA GONZALES, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 07-0676 (PLF) |
| ERIC H. HOLDER, JR., Attorney General, United States Department of Justice,[1] | ) |
| Defendant. | ) |

OPINION

This matter is before the Court on defendant's motion for summary judgment ("Mot."), plaintiff's opposition thereto ("Opp."), and defendant's reply ("Reply"). Plaintiff, Ada Gonzales, brought suit against her employer, the United States Department of Justice, alleging retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. Ms. Gonzales alleges that DOJ retaliated against her when it failed to select her for promotion. DOJ maintains that it is entitled to summary judgment on this claim because it has asserted legitimate, non-retaliatory reasons for not selecting Ms. Gonzales, and because Ms. Gonzales has failed to produce evidence that these reasons are a pretext for retaliation. Upon consideration of the motion, plaintiff's opposition,

---

[1] The complaint named Alberto Gonzales, former Attorney General, as the defendant in this case. The Court previously substituted Michael Mukasey, Mr. Gonzales' successor, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. The Court now substitutes Eric H. Holder, Jr., Mr. Mukasey's successor, pursuant to the same Rule.

defendant's reply, and the entire record in the case, the Court grants defendant's motion for summary judgment.

## I. BACKGROUND

Plaintiff Ada Gonzales, a Hispanic female, has worked in the DOJ Office of Justice Programs ("OJP") since June 1995.  See Opp. at 1.  Starting as a financial analyst at the GS-12 level, Ms. Gonzales was promoted to a GS-13 position and then a GS-14 position with increasing supervisory responsibilities.  Id.  In March 2000, Ms. Gonzales was named a branch manager in the Training and Policy Division ("TPD") of OJP's Office of the Comptroller. Defendant's Statement of Material Facts Not in Dispute ("Def.'s Statement") ¶ 1.

On February 27, 2002, while still a branch manager in TPD, Ms. Gonzales contacted her employer's Equal Employment Opportunity Office, alleging that her direct supervisor, then-TPD director Travis McCrory, had discriminated against her and subjected her to a hostile work environment because of her national origin, gender and age in violation of federal law.  See Def.'s Statement ¶ 3; Opp., Ex. 11 at 2-3.  The director of the Office of the Comptroller, Cynthia Schwimer, became aware of Ms. Gonzales' EEO complaint on April 16, 2002, when she was copied on an email notifying Mr. McCrory of Ms. Gonzales' EEO activity. Def.'s Statement ¶ 4.  Ms. Gonzales filed a formal complaint against Mr. McCrory with the EEO Office in June 2002.  See Opp., Ex. 11 at 2.

On June 4, 2002, OJP's Office of Personnel announced an opening for the TPD director position, which became vacant when Mr. McCrory accepted a position in another federal

agency.  Def.'s Statement ¶¶ 6-7.  Ms. Schwimer was the selecting official for the position, for which Ms. Gonzales submitted a timely application.  Id. ¶¶ 11-12.

Ms. Schwimer received a promotion candidate list that identified four eligible GS-14 OJP employees who were qualified for the position, including Ms. Gonzales and the candidate eventually selected for the promotion, Joanna Suttington, an African American female.  Def.'s Statement ¶ 13.  At that time, Ms. Suttington was a GS-14 manager of the Financial Services Branch of the Financial Management Division in OJP.  See Mot., Ex. 11 at 4.  Ms. Schwimer "had known each of the four candidates professionally for at least ten years."  See Def.'s Statement ¶ 14.  In July 2002, Ms. Schwimer officially selected Ms. Suttington for the open position.  Id. ¶ 15.  Ms. Gonzales subsequently amended her pending EEO complaint to include a claim of retaliation by Ms. Schwimer.  See Mot. at 2.

Ms. Gonzales' discrimination and retaliation claims against the DOJ were considered by an Administrative Judge for the Equal Employment Opportunity Commission in 2005.  The Administrative Judge granted DOJ's motion for judgment without a hearing on Ms. Gonzales's discrimination and hostile work environment claims and, after a hearing, ruled in favor of DOJ on her retaliation claim.  Mot. at 2.  The DOJ Complaints Adjudication Office issued a final agency decision on July 6, 2005, affirming the decision in favor of DOJ, and the EEOC Office of Federal Operations affirmed that decision again on Ms. Gonzales' further appeal.  Id.  On April 13, 2007, Ms. Gonzales filed a complaint in this Court, alleging that DOJ had deprived her of the promotion to TPD director in retaliation for her contact with the EEO Office.

II. STANDARD OF REVIEW

Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.

On a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006). In considering such a motion, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). She is required to

provide evidence that would permit a reasonable jury to find in her favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims." Freedman v. MCI Telecomms. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

### III. LEGAL FRAMEWORK

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in protected activity, such as filing a charge of discrimination. See 42 U.S.C. § 2000e-3(a).[2] Absent direct evidence that an employment-related decision was retaliatory, a retaliation claim must be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009). To establish a prima facie case of retaliation under that framework, the plaintiff must first show "(1) that [she] engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two." Jones v. Bernanke, 557 F.3d at 677; see also Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006). "Such a showing raises a rebuttable presumption of unlawful [retaliation] and shifts to the defendant the burden to rebut the presumption by asserting a legitimate, non-discriminatory [or non-retaliatory] reason for its actions." Smith v. District of Columbia, 430 F.3d 450, 455 (D.C.

---

[2] Federal employees must exhaust their administrative remedies before filing suit under Title VII. In this case, the parties do not dispute that Ms. Gonzales appropriately exhausted her administrative remedies. See Compl. ¶ 3; Mot. at 2.

Cir. 2005) (citation and internal quotation marks omitted).  Once the defendant has done so, the burden-shifting framework "disappears," and the Court "must decide whether a reasonable jury could infer" illegal retaliation from all available evidence, whether related to the prima facie showing, plaintiff's attempts to show that the defendant's proffered reason is pretextual, or other aspects of the case.  Murray v. Gilmore, 406 F.3d 708, 713 (D.C. Cir. 2005) (citing Waterhouse v. District of Columbia, 298 F.3d 989, 992-93 (D.C. Cir. 2002)); see also Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 493-94 (D.C. Cir. 2008).

Once an employer has asserted a legitimate, non-retaliatory reason for the adverse action taken against the plaintiff, the Court "need not — and should not — decide whether the plaintiff has actually made out a prima facie case" under the burden-shifting framework described above.  Brady v. Office of Sergeant at Arms, 520 F.3d at 494.  The Court must instead "proceed to the question of retaliation *vel non*."  Taylor v. Solis, 571 F.3d 1313, 1320 n.4 (D.C. Cir. 2009).  In resolving that question on summary judgment, the Court may find for a defendant if the plaintiff has failed either (1) to rebut the legitimate, non-retaliatory reason offered by the employer for the employment action at issue, or (2) to adduce evidence supporting a necessary element of her case, such as her employer's commission of a materially adverse act against her. Id.  "[T]he district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted [non-retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis" of her protected activity?  Brady v. Office of Sergeant at Arms, 520 F.3d at 492.

IV. DISCUSSION

While the DOJ acknowledges that plaintiff engaged in protected EEO activity and that her non-selection constitutes a legally cognizable injury, it nevertheless argues that Ms. Gonzales has failed to establish a prima facie case of retaliation because she has not demonstrated a causal connection between the protected activity and the injury. Opp. at 5. For the reasons explained above, however, the existence of a prima facie case "almost always" becomes "irrelevant" once a defendant has asserted a non-retaliatory justification for an adverse employment action. Brady v. Office of Sergeant at Arms, 520 F.3d at 494. Here, the DOJ has offered a legitimate, non-retaliatory reason for Ms. Suttington's promotion over Ms. Gonzales, explaining that, in the estimation of Ms. Schwimer, Ms. Suttington possessed stronger "supervisory skills" and was "more responsive to the needs of the office, a better team player, more accountable for the work completed by her office, a better problem solver . . . , and more flexible" than the plaintiff. Mot. at 8 (citing Mot., Ex. 6 at 22, 24, 47-48). As a result, Ms. Gonzales can survive summary judgment only by pointing to evidence in the record sufficient to convince a reasonable jury that the reasons proffered by DOJ are pretextual, and that Ms. Schwimer's choice was actually motivated by retaliatory intent. See Jones v. Bernanke, 557 F.3d at 678; Brady v. Office of the Sergeant at Arms, 520 F.3d at 494. The Court therefore will proceed directly to consideration of that issue.

Plaintiff's arguments can be reduced to four assertions intended to show pretext and retaliatory intent: (1) Ms. Gonzales was in fact better qualified than Ms. Suttington but was passed over anyway; (2) DOJ's proffered justification for the selection of Ms. Suttington over Ms. Gonzales rests on criteria that are "highly subjective" and hence not credible; (3) Ms.


Schwimer "preselected" Ms. Suttington for the post of TPD director; and (4) Ms. Schwimer lied about various aspects of the hiring process. The Court will address each of these contentions in turn and explain why they do not establish a genuine issue of material fact that would qualify this case for trial.

*A.  Comparative Qualifications of the Candidates*

Plaintiff insists that, as compared to Ms. Suttington, the woman who was eventually chosen to fill the position of TPD director, Ms. Gonzales "was the significantly better qualified candidate and as such the Defendant's reason was mere pretext for retaliation." Opp. at 9 (internal quotation marks omitted). It is true that, when an employer asserts that a plaintiff was not promoted because she was less qualified than another candidate, a factfinder may deem the employer's explanation pretextual if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job." Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc). Nevertheless, because courts do not serve as "super-personnel department[s] that reexamine[ ] an entity's business decisions," Holcomb v. Powell, 433 F.3d at 897 (internal quotation marks and citation omitted), "[a] plaintiff asserting that an employer's explanation is pretextual based upon comparative qualifications faces a formidable task," Nyunt v. Tomlinson, 543 F. Supp. 2d 25, 39 (D.D.C. 2008). "[I]n order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination." Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (internal quotation marks and citation omitted). For example, in Aka, the court of appeals found evidence of a qualifications gap sufficient to raise a genuine question of fact where, inter alia, the plaintiff had

nineteen years of relevant employment experience, while the candidate who was hired had two months of relevant volunteer work. Aka v. Washington Hosp. Ctr., 156 F.3d at 1296.

       No such stark gap exists here.  On the contrary, the qualifications of Ms. Gonzales and Ms. Suttington are closely matched.  Ms. Gonzales argues that she was more qualified than Ms. Suttington because she was "directly in line" for the position of TPD director, and had served as Acting Director for several months in 2000.  There is, however, no evidence that the Training and Policy Division of the Office of the Comptroller made lockstep promotions, so that an employee of particular seniority or with a certain title could be assured of filling the next open, more senior position.  Indeed, the only evidence that Ms. Gonzales was "directly in line" is her own unsupported assertion.  See Opp. at 10; see also Hastie v. Henderson, 121 F. Supp. 2d 72, 81 (D.D.C. 2000) (a plaintiff's "unsupported, conclusory assertion" regarding her own performance is "insufficient to defeat a motion for summary judgment"); Waterhouse v. Dist. of Columbia, 124 F. Supp. 2d at 7 ("Plaintiff cannot establish pretext simply based on her own subjective assessment of her own performance.").  Nor does Ms. Gonzales' brief tenure in 2000 as Acting Director distinguish her significantly, since Ms. Suttington had periodically served as Acting Director of her own division within the Office of the Comptroller.  Mot., Ex. 11 at 4.

       Ms. Gonzales claims to have more experience in the relevant fields of financial management training, but offers no evidence that Ms. Suttington lacks such experience.  See Opp. at 10.  In fact, the defendant offers undisputed evidence that Ms. Suttington had extensive experience in financial management training in the Office of the Comptroller, albeit outside of TPD.  See Reply at 7-9.  Similarly, contrary to Ms. Gonzales' assertion that she has "more accomplishments" than Ms. Suttington, she cites no qualification of her own that is unmatched

9

by those of Ms. Suttington: Plaintiff has a Master's in Business Administration, Opp. at 11; Ms. Suttington has a Master's degree in accountancy and is a Certified Public Accountant, Mot., Ex. 11 at 11, two facts that are undisputed.  Ms. Gonzales has attended seminars on a "wide-range of management, leadership and grant management related [sic] fields," Opp. at 11; Ms. Suttington's resume, its contents uncontroverted by the plaintiff, also shows participation in a long list of professional development activities, Opp., Ex. 19 at 8.

Finally, while Ms. Gonzales claims "superior management ability," she has produced no evidence showing that her ability is superior to Ms. Suttington's.  Instead, she cites the statements of two supervisees who deem Ms. Gonzales to be a "good" and "positive" supervisor.  Opp. at 11.  In isolation, however, these assessments have no significance.  Ms. Gonzales' task is not to point to evidence that would allow a reasonable jury to conclude that she is a good supervisor; it is to point to evidence from which a jury could reasonably infer that she is a better supervisor than Ms. Suttington.  Ms. Gonzales has produced no evidence to support that latter contention.  See Opp. at 11.

In sum, plaintiff's evidence on this issue amounts largely to conclusory summaries of Ms. Gonzales' qualifications with little or no meaningful comparison to relevant qualifications held by Ms. Suttington.  As a result, there is insufficient evidence to permit a reasonable jury to conclude that Ms. Gonzales was significantly better qualified for the director position than was Ms. Suttington, and this line of argument therefore does not support plaintiff's claim of pretext. See Barnette v. Chertoff, 453 F.3d 513, 518 (D.C. Cir. 2006); Stewart v. Ashcroft, 352 F.3d 422, 430 (D.C. Cir. 2003).

*B. Subjective Criteria*

According to plaintiff, Ms. Schwimer's claim that she chose Ms. Suttington rather than Ms. Gonzales because of the former's greater supervisory skills and sense of accountability is based on "highly subjective reasoning that is unsupported by concrete evidence," which "can only lead to the conclusion that Defendant's explanation is pretext for retaliation." Opp. at 15. This argument is both legally and factually incorrect. An employer's use of subjective criteria in justifying the promotion of one candidate instead of another does not necessarily permit the inference of pretext. See Aka v. Washington Hosp. Ctr., 156 F.3d at 1298; accord Manning v. Chevron Chemical Co., LLC, 332 F.3d 874, 882 (5th Cir. 2003) (citing Millbrook v. IBP, Inc., 280 F.3d 1169, 1176 (7th Cir. 2002)); Denney v. City of Albany, 247 F.3d 1172, 1185 (11th Cir. 2001). "A subjective reason can be legally sufficient, legitimate and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion." Pearsall v. Holder, 610 F. Supp. 2d 87, 102 (D.D.C. 2009) (citing Laboy v. O'Neill, 180 F. Supp. 2d 18, 23 (D.D.C. 2001)) (internal quotation marks omitted).

Here, the defendant has presented uncontroverted record evidence tending to show that Ms. Shwimer's assessment of the relative leadership skills and work performance of Ms. Gonzales and Ms. Suttington was founded upon a "clear and reasonably specific factual basis." For example, Ms. Gonzales' supervisors received complaints regarding her time management and leadership skills from at least two DOJ employees. See Mot. at 10 (citing Mot., Ex. 12 at 16-27; Mot., Ex. 13 at 16-17). Ms. Schwimer herself had known the plaintiff in a professional capacity for over ten years, Mot., Ex. 6 at 16, and observed that Ms. Gonzales had a tendency to blame her supervisees for her own mistakes, id. at 35. There is no evidence, on the other hand,

11

of similar problems in Ms. Suttington's record. Ms. Schwimer's arguably "subjective" reasons for choosing Ms. Suttington as the better qualified candidate therefore are supported by specific facts in the record and would not — merely because they are subjective — lead a reasonable jury to conclude that they are pretextual.

### C. Preselection

Ms. Gonzales also attempts to rebut the non-retaliatory reasons asserted by the defendant by contending that Ms. Suttington was "preselected" for the position of TPD director — that is, selected by Ms. Schwimer to fill the position before Ms. Schwimer had given any real consideration to the other three qualified candidates. See Opp. at 17. Plaintiff relies for evidence of this proposition on Ms. Suttington's statements that she spoke informally with Ms. Schwimer about the open TPD director position for about three minutes in June 2002, after Ms. Suttington had submitted an application for the position. See Opp., Ex. 5 at 24-26.[3] Ms. Suttington has referred to this discussion as an "interview," see id. at 24-25, while Ms. Schwimer has said that she did not interview any of the candidates for the TPD director position. See Opp., Ex. 16 at 98. The record suggests that this discrepancy may result from Ms. Suttington's and Ms. Schwimer's differing definitions of the term "interview." According to Ms. Suttington, she and Ms.

---

[3] Ms. Gonzales also points to the form, signed by Ms. Schwimer, formally requesting the appointment of Ms. Suttington to the position of TPD director. See Opp. at 17-18; Opp., Ex. 6. Ms. Schwimer's signature on that form is dated June 3, 2002, although Ms. Suttington was not officially chosen for the position until July 2002. The defendant has explained this discrepancy through uncontroverted affidavits which show that it was the practice in the Office of Justice Programs at that time for a supervisor to sign and submit a blank request form to the Office of Personnel whenever a position became open. The name of the person eventually chosen to occupy that position would be filled in by an employee of the Office of Personnel once the hiring process was concluded. See Reply, Ex. 3.

Schwimer briefly discussed the nature of the TPD director position at the conclusion of a meeting about an unrelated work matter. Opp., Ex. 4 at 149-50. The record contains no suggestion that Ms. Schwimer asked about Ms. Suttington's qualifications or implied that Ms. Suttington would receive the job. See id. In light of the conversation's brevity and informality, its status as an interview is questionable.

But even if this discussion between Ms. Suttington and Ms. Schwimer were assumed to be an interview, and even if it were further assumed to support a claim of preselection, it provides no support for Ms. Gonzales' attempt to create an inference of pretext. "Preselection . . . does not violate Title VII when such preselection is based on the qualifications of the party and not on some basis prohibited by Title VII." Nyunt v. Tomlinson, 543 F. Supp. 2d at 39 (citing Goosetree v. Tennessee, 796 F.2d 854, 861 (6th Cir. 1986)); see also Oliver-Simon v. Nicholson, 384 F. Supp. 2d 298, 310 (D.D.C. 2005) (same). "Title VII does not prohibit hiring practices that are unrelated to the protected status (*e.g.*, race) of an applicant." Washington v. Chao, 577 F. Supp. 2d 27, 46 (D.D.C. 2008). Here, Ms. Gonzales has adduced no evidence tending to show that, even if Ms. Schwimer did preselect Ms. Suttington, she did so out of an intent to retaliate, rather than a desire to hire the most qualified candidate. After all, there were four applicants qualified for the TPD director position, see Def.'s Statement ¶ 13, and Ms. Schwimer did not single out Ms. Gonzales by interviewing everyone but her; rather, if Ms. Schwimer interviewed anyone at all, she interviewed *none* of the four candidates except for Ms. Suttington.

*D.  Ms. Schwimer's Veracity*

Citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993), Ms. Gonzales declares that "a 'suspicion of mendacity' is enough to support a finding of pretext and discrimination," and then proceeds to attack several statements of Ms. Schwimer's as "not truthful." Opp. at 12.  The context in which "a suspicion of mendacity" was discussed in <u>Hicks</u>, however, simply is not present here.  The "mendacity" to which the Supreme Court alluded was that of a putative employer who may have manufactured the reasons cited as justifications for an adverse employment action in order to hide a motivation that was, in fact, discriminatory.  <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. at 511.  A factfinder's reasonable inference that an employer may have fabricated a nondiscriminatory rationale — "a suspicion of mendacity" — could, in combination with "[t]he factfinder's disbelief of the reasons put forward by the defendant" and "the elements of the prima facie case, suffice to show intentional discrimination." <u>Id</u>. Relevant evidence of dishonesty, then, is that evidence which tends to show that the employer-defendant has given false reasons for its actions.

Ms. Gonzales has provided no such evidence here.  Instead, she has seized upon small to nonexistent inconsistencies in Ms. Schwimer's accounts of nonmaterial events in an attempt to demonstrate that Ms. Schwimer is an untruthful person who must have lied about her reasons for selecting Ms. Suttington.  For example, Ms. Gonzales points out that Ms. Suttington has stated that she met briefly with Ms. Schwimer after applying for the TPD director position and discussed the job's requirements with her.  <u>See</u> Opp., Ex. 5 at 24-26.  Ms. Suttington has termed this meeting an "interview." <u>Id</u>. at 24-25.  Ms. Schwimer, on the other hand, has denied interviewing Ms. Suttington or any other candidate.  Opp., Ex. 16 at 98; <u>see</u> discussion <u>supra</u>, at

12-13. There may be a factual question as to whether Ms. Schwimer had a discussion about the job with Ms. Suttington, even if she would not term that discussion an interview. But there certainly is insufficient evidence to permit a reasonable factfinder to conclude that Ms. Schwimer told a lie, rather than misremembered what occurred or differed from Ms. Suttington in what her conception of an interview is. Regardless, the issue is not material here, because even if Ms. Schwimer conducted a three-minute job interview with Ms. Suttington, that fact has no bearing on whether Ms. Schwimer believed Ms. Suttington to be better qualified than Ms. Gonzales. Any alleged dishonesty on Ms. Schwimer's part, then, does not relate to the "suspicion of mendacity" discussed in Hicks, because it does not undermine the defendant's stated reasons for promoting Ms. Suttington instead of Ms. Gonzales. See Aka v. Washington Hosp. Ctr., 156 F.3d at 1293 (explaining Hicks' "suspicion of mendacity" language in terms of an employer's dishonesty regarding the reasons for an adverse employment action); see also Pearsall v. Holder, 610 F. Supp. at 100 ("suspicion of mendacity" may be present where factfinder could reasonably decide that defendant's justifications for not hiring plaintiff were "not only inaccurate," but were also used by defendant "to cover up discriminatory and retaliatory motives").

  Ms. Gonzales' other arguments on the subject of "mendacity" tread similar ground, focusing on minor, immaterial inconsistencies in Ms. Schwimer's accounts of the hiring process. Ms. Schwimer said she never discussed her selection of Ms. Suttington with anyone before finalizing it, see Opp., Ex. 16 at 98; Ms. Gonzales argues that this statement is "not truthful" because Ms. Suttington said she was interviewed by Ms. Schwimer, see Opp. at 12. Ms. Schwimer said, according to a deposition transcript, that Ms. Suttington had an "NBA," see Opp., Ex. 12 at 11, rather than a Master's degree, and later corrected this error on an errata sheet,

see Opp. at 13; Ms. Gonzales interprets this as evidence of Ms. Schwimer's "utter lack of credibility." Id.[4] Ms. Schwimer said that she did not know prior to July 16, 2002, who had applied for the TPD director position, see Opp., Ex. 16 at 96; Ms. Gonzales says this cannot be true, because Ms. Suttington allegedly interviewed Ms. Suttington in June 2002. Opp. at 12.

Some of these supposed lies by Ms. Schwimer do not even qualify as inconsistencies. Discussing a job's requirements, or even interviewing an applicant, for example, does not logically qualify as a discussion of the hiring official's actual selection of a particular candidate. Furthermore, each of Ms. Gonzales' contentions focuses, once again, on an issue that is collateral to the question of pretext or retaliation. None of these statements by Ms. Schwimer could even give rise to a reasonable inference of dishonesty, and certainly none represents competent evidence of pretext.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the plaintiff has identified no genuine issues of material fact, and that defendant is entitled to judgment as a matter of law on Ms. Gonzales' retaliation claim.

An Order consistent with this Opinion will be issued this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 22, 2009

---

[4] The reference to an "NBA" is presumably a typographical error in the transcript. See Reply at 13. Ms. Gonzales has a Master's degree in business administration, see Opp. at 11, while Ms. Suttington has a Master's degree in accountancy, Mot., Ex. 11 at 11.